UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

Case No. 09-13851

            Plaintiff,

vs.

Mark A. Goldsmith
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

P.A.M. TRANSPORT, INC.,

            Defendant.

_____/

## REPORT AND RECOMMENDATION
## MOTION FOR SUMMARY JUDGMENT (Dkt. 43)

## I.    PROCEDURAL HISTORY

Plaintiff, the Equal Employment Opportunity Commission (EEOC) filed suit against defendant on September 29, 2009.  (Dkt. 1).  An amended complaint was filed on April 1, 2010.  (Dkt. 13).  Defendant filed a motion for summary judgment on December 13, 2010.  (Dkt. 43).  This motion was referred to the undersigned by District Judge Mark A. Goldsmith on December 21, 2010.  (Dkt. 46).  The EEOC filed a response on January 6, 2011.  (Dkt. 48).  Defendant filed a reply on January 20, 2011.  (Dkt. 55).  The parties filed a joint statement of resolved and unresolved issues on February 16, 2011.  (Dkt. 58).  Pursuant to notice, the Court held a hearing on February 23, 2011.  (Dkt. 47).  This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that the Court **GRANT** defendant's motion for summary judgment and **DISMISS** the complaint without prejudice.

## II.    FACTUAL BACKGROUND

John Doe began his employment with PAM Transport in March of 2005 as an over-the-road truck driver.  He drove without incident until August 31, 2005, when Doe made PAM Transport aware of the fact that he was visiting with his physician on September 1, 2005.  EEOC contends that Doe made PAM aware of this routine doctor visit because PAM's policy required him to do so.[1]  Because of Doe's seeking medical treatment, the company's Medical Review Department requested Doe's medical records to address concerns about the impact of potential symptoms of his condition on Doe's safety as driver.  According to defendant, Doe also had a list of medications he took due to his illness, each with its own list of side effects.

PAM Transport received the medical records on September 27, 2005 and promptly sent them to Dr. Craig Cooper, their medical review officer.  Dr. Cooper

---

[1] Defendant asserts that in seeking information related to Doe's medical condition, it was complying with its responsibility to insure that its employees who operate motor vehicles met the requirements of DOT regulation 49 C.F.R. § 391.41.  An employer who allows an employee to operate a motor vehicle in violation of 49 C.F.R. § 391.41 creates a "substantial risk" to the employee and the public and faces civil and criminal liability if an accident results.  *Chandler v. City of Dallas*, 2 F.3d 1385, 1395 (5th Cir. 1993).

is an independent physician from Springdale, Arkansas with extensive experience reviewing medical records for compliance with DOT medical regulations. PAM Transport did not allow Doe to drive in the meantime because of continuing safety concerns. Dr. Cooper issued a report on October 10, 2005, finding that Doe had been non-compliant with his medications in the past and such noncompliance could cause serious safety issues in Doe's operation of a truck. Dr. Cooper also found concern with a previous disability rating of 100% that Doe had received from the Veterans' Administration. Dr. Cooper made the following recommendations: that Doe re-visit his physician for a long enough period of time where his compliance with his medicinal regimen could be documented; that Doe's physician provide records that the specific medications Doe was taking were safe for driving under the DOT; and that Doe submit to a functional capacity evaluation.

This report was forwarded to Doe on October 10, 2005, but no response was given until November 14, 2005, when Michigan Protection and Advocacy Service, Inc. (MPAS) responded on behalf of Doe. A representative from MPAS, Gayle Rosen, sent a letter to PAM Transport to find out what it would take to allow Doe to resume driving for PAM Transport. The Risk Manager at PAM Transport, Tony Longinotti, replied by letter the following day explaining the requirements, largely based on Dr. Cooper's report. On November 30, 2005, Rosen responded, stating

that Doe would submit to an evaluation and enclosed a note from Doe's physician stating that the medications "should not" affect Doe's ability to drive. Mr. Longinotti responded on December 8, 2005 indicating that a statement that medications "should not" affect driving ability is not the same as a definitive finding that the medications are safe while driving under the DOT regulations. Additionally, Longinotti pointed out the concerns over Doe's non-compliance with his medications, emphasizing the need for Doe to re-visit his physician for a long enough period of time to document a showing of compliance.

The Medical Review Department at PAM Transport, in its effort to gauge Doe's compliance with Dr. Cooper's original report, forwarded the letters between Rosen and Longinotti, and Doe's doctor's note regarding medications to Dr. Cooper in order for Dr. Cooper to supplement his October 10, 2005 report. Dr. Cooper did so in a December 15, 2005 report in which he pointed to issues that were "obviously safety concerns," including general noncompliance with medications and side effects like nausea, diarrhea, and eye problems. Longinotti forwarded Dr. Cooper's supplemental report on January 3, 2006 along with a letter to Rosen, explaining that PAM Transport would require compliance with Dr. Cooper's recommendations in order to allow a return to work. The letter concluded by explaining that Doe had the option of appealing PAM Transport's decision under DOT procedures at 49 C.F.R. § 391.47. According to defendant,

Doe made no further effort to discuss his future with PAM Transport.  According to the EEOC, defendant had administratively terminated Doe for failure to contact the company.

According to defendant, there has been no evidence as to any other members of the potential pattern or practice class participating in the administrative appeal process rather than proceeding in a similar fashion as Doe. Instead of exercising his right to appeal, Doe began new employment as a truck driver with Swift Transportation Co., Inc. on January 13, 2006.

Several months after securing other employment, Doe filed his Charge of Discrimination against PAM Transport with the EEOC on June 5, 2006.  The EEOC began an investigation that lasted nearly three years.  According to defendant, the EEOC explained in a letter to counsel for PAM Transport that the EEOC had made a determination of discrimination.  The EEOC issued a 05/14/2009 pre-determination letter to PAM and invited PAM to submit additional evidence to support its position.  The EEOC then sent a letter with its Determination and a proposed Conciliation Agreement to Kenneth Hixson dated May 28, 2009 stating that no discussion on the merits would be allowed.  The EEOC sent PAM Transport's Michigan counsel a Conciliation Agreement on June 16, 2009, asking for $26,550 in backpay and $100,000 in punitive and compensatory damages for Doe, as well as 6 months of backpay for all drivers

discharged between 2005 and 2007, which also stated: "These are subject to negotiation."

According to defendant, during the next few weeks Michigan counsel discussed resolution with the EEOC, suggesting a meeting between EEOC and defendant. According to the EEOC, it, and not defendant, suggested the possibility of a conciliation conference. Two weeks after submitting the Conciliation Agreement, Lolita Davis, the EEOC investigator, sent an e-mail declaring that "the case was no longer open for discussion as it relates to the merits." She informed counsel for PAM Transport that conciliation efforts would be a monetary offer, with no discussion of issues related to the claims or individuals involved. No meeting would be scheduled. According to defendant, the EEOC still had not provided an approximate number of drivers affected, any identification for such drivers, or a basis for the monetary figures suggested in the Conciliation Agreement.

Defendant responded by explaining Doe's abdication of the DOT appeals process that undermined the ability to bring the current charge. Defendant terminated conciliation efforts with its 07/10/09 letter that stated due to "irreconcilable differences … conciliation must fail." During this time, defendant's counsel was discussing a meeting between the EEOC and defendant to try to resolve the issues. According to the EEOC, once defendant indicated

"conciliation must fail," the EEOC ceased its conciliation efforts.  The EEOC did not respond with any counter-proposal and did not make an attempt to converse with PAM Transport further via letter or telephone until filing its Complaint on behalf of Doe and others in this Court on September 29, 2009.  According to the EEOC, defendant terminated conciliation efforts with its 07/10/09 letter that stated due to "irreconcilable differences, … conciliation must fail."

## III.   ANALYSIS AND CONCLUSION

### A.   Standard of Review

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all

justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).  Under Federal Rule of Civil Procedure 56, a party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration, stipulations, admission, interrogatory answers, or other materials; or a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact.  Fed.R.Civ.P. 56(c)(1).

B.    Exhaustion Under DOT Regulations

This appears to be an issue of first impression, at least in this circuit.  While many courts have addressed whether the EEOC can pursue claims on behalf of individuals who have not exhausted their administrative remedies with the EEOC, none appear to have addressed whether the EEOC may also pursue claims on behalf of individuals who have not exhausted administrative remedies under an entirely separate regulatory scheme administered by another federal government agency such as the DOT, post-*E.E.O.C. v. Waffle House*, 534 U.S. 279, 287-88, 297 (2002).

The first issue in this analysis involves the cases addressing the

circumstances where the EEOC has been held not to stand in the "shoes" of the individual claimant.  Innumerable cases have recognized that the EEOC does not precisely stand in the shoes of a aggrieved employee, including several cases concluding that it does not matter whether the aggrieved employee exhausted his administrative remedies:  *E.E.O.C. v. SMWM Management, Inc*., 2009 WL 1097543 (D. Ariz. 2009), citing, *Williams v. Owens-Illinois, Inc*., 665 F.2d 918, 923 (9th Cir. 1982) (finding non-filing class members governed by the statute of limitations of the charging parties); *E.E.O.C. v. Waffle House*, 534 U.S. 279, 287-88, 297 (2002) (listing situations in which "the EEOC does not stand in the employee's shoes" and recognizing the distinction between an individual employee's private cause of action and the EEOC's enforcement role in securing relief for a group of individuals); *Occidental Life. Ins. Co. of Cal. v. E.E.O.C.*, 432 U.S. 355, 368 (1977) (holding that state statutes of limitations are not applicable to EEOC enforcement actions and stating that "the EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties; it is a federal administrative agency charged with the responsibility of investigating claims of employment discrimination and settling disputes"); *E.E.O.C. v. Gen. Elec. Co.*, 532 F.2d 359, 373 (4th Cir. 1976) ("It follows that the standing of the EEOC to sue under Title VII cannot be controlled or determined by the standing of the charging party to sue, limited as he is in rights to vindication of his own individual rights.");

*E.E.O.C. v. Catholic Healthcare West*, 530 F.Supp.2d 1096, 1107 (C.D. Cal. 2008) ("The EEOC may thus seek relief for ... any other employees who may have been affected by Defendant's discriminatory policy even though they have not complied with the requirements necessary to bring private actions on their own."); *E.E.O.C. v. Univ. of Phoenix*, *Inc.*, 2008 WL 1971396, *4 (D. Ariz. 2008) (holding that the EEOC could seek victim-specific relief on claims that individual employees did not exhaust by filing charges with the EEOC); *see also E.E.O.C. v. Sterling Jewelers, Inc.*, 2010 86376 (W.D. N.Y. 2010) (A private plaintiff can bring a lawsuit only for those unlawful employment practices described in the administrative charge, but EEOC enforcement actions are not limited to the claims presented by the charging parties) (citations omitted).

As set forth above, in *Waffle House*, the Supreme Court held that "the EEOC does not stand in the employee's shoes" and recognized the distinction between an individual employee's private cause of action and the EEOC's enforcement role in securing relief for a group of individuals. The Court explained the statutory and policy underpinnings for its conclusion by focusing on the language of two statutes whose interplay was at issue (the Federal Arbitration Act and the Americans with Disabilities Act), rather than on an evaluation of the "competing policies" implemented by the two statutes, as the lower court had done. While the lower court recognized that the EEOC never agreed to arbitrate its statutory claim, and

Report and Recommendation
Motion for Summary Judgment
*E.E.O.C. v. P.A.M. Transport*; Case No. 09-13851

that the EEOC has "independent statutory authority" to vindicate the public interest, it opined that permitting the EEOC to prosecute the individual's claim in court "would significantly trample" the strong federal policy favoring arbitration because the individual employee had agreed to submit his claim to arbitration. To effectuate this policy, the lower court distinguished between injunctive and victim-specific relief, and held that the EEOC was barred from obtaining the latter because any public interest served when the EEOC pursues "make whole" relief is outweighed by the policy goals favoring arbitration. According to the lower court, only when the EEOC seeks broad injunctive relief, does the public interest overcome the goals underpinning the FAA.

Based on the language of Title VII, the Supreme Court disagreed. Specifically, under Title VII, once a charge is filed, the "EEOC is in command of the process" and has exclusive jurisdiction over the claim for 180 days. During that time, the employee must obtain a right-to-sue letter from the agency before prosecuting the claim. If, however, the EEOC files suit on its own, the employee has no independent cause of action, although the employee may intervene in the EEOC's suit. The Court concluded that the "statute clearly makes the EEOC the master of its own case and confers on the agency the authority to evaluate the strength of the public interest at stake. Absent textual support for a contrary view, it is the public agency's province—not that of the court—to determine whether

public resources should be committed to the recovery of victim-specific relief. And if the agency makes that determination, the statutory text unambiguously authorizes it to proceed in a judicial forum" and avoid the arbitration remedy to which the employee would have been bound. *Id*. at 291-292. The Court also held that its conclusion was not inconsistent with the FAA because the FAA's purpose was to put arbitration agreements *between contracting parties* on the same footing as other contracts, not to elevate them above other contracts – and there was no dispute that the EEOC was not a party to the arbitration agreement at issue. "Accordingly, the proarbitration policy goals of the FAA do not require the agency to relinquish its statutory authority if it has not agreed to do so." *Id*. at 294.

The law is equally clear that an individual plaintiff whose ADA claim also falls within the scope of the Federal Motor Carrier Safety Regulations (FMCSR) must exhaust his or her administrative remedies under such regulations, separate and apart from any obligation to exhaust under the ADA. As explained by the Eighth Circuit in *Harris v. P.A.M. Transport*, *Inc.*, 339 F.3d 635 (8th Cir. 2003), Congress has delegated to the Secretary of Transportation the authority to prescribe driver qualifications. *See* 49 U.S.C. § 31102(b)(1). Pursuant to this authority, the DOT promulgated the FMCSR, under which a person "shall not drive a commercial motor vehicle" without a "medical examiner's certificate that [the person] is physically qualified." 49 C.F.R. § 391.41(a). Specifically, "the medical

examiner is required to certify that the driver does not have any physical, mental, or organic condition that might affect the driver's ability to operate a commercial motor vehicle safely."  49 C.F.R. § 391.43(f).  And, DOT regulations provide appeal procedures for instances of "disagreement between the physician for the driver and the physician for the motor carrier concerning the driver's qualifications."  49 C.F.R. § 391.47(b)(2).  In its analysis, the Eighth Circuit turned to the "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."  *Harris*, 339 F.3d at 638, quoting, *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938).  Indeed, the court noted that until a plaintiff has pursued available administrative relief, "suit is premature and must be dismissed."  *Harris*, 339 F.3d at 638, quoting, *Reiter v. Cooper*, 507 U.S. 258, 269 (1993).  "Exhaustion applies where a claim is cognizable in the first instance by an administrative agency alone."  *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956) (internal quotation marks omitted).

Based on the foregoing principles, the Eighth Circuit observed that federal courts addressing claims similar to that of the plaintiff in *Harris* have held that "[e]xhaustion of DOT procedures should be required" in these circumstances because driver fitness "falls squarely within the regulatory scheme (and substantive expertise) of DOT."  *Harris*, 339 F.3d at 638, quoting, *Campbell v. Federal*

*Express Corp.*, 918 F.Supp. 912, 918 (D. Md. 1996); *see also Prado v. Continental Air Transp. Co.*, 982 F.Supp. 1304, 1308 (N.D. Ill. 1997) ("The court will not abrogate clear congressional intent which vests driver fitness issues in the Secretary of Transportation.").  The Eighth Circuit concluded that:

> The DOT is charged with and is much better equipped to handle resolution of disputes over a driver's medical qualifications and can do so far more expertly and efficiently than a reviewing court.  Thus, we hold that failure to exhaust the remedies available under 49 C.F.R. § 391.47 requires dismissal of this action, precluding Harris from obtaining review of his ADA claim in this court.

*Harris*, 339 F.3d at 638.  There is no shortage of other federal courts adopting the reasoning in *Harris*.  *Cliburn v. CUSA KBC, LLC*, 2007 WL 4199605, *3 n. 32 (W.D. Tex. 2007) (citing cases).[2]

The question before the Court is whether the EEOC, via its Congressional

--------

[2] *See Myers v. J.B. Hunt Transp.*, 2006 WL 3479001, at *4 (M.D. N.C. 2006) (dismissing plaintiff's ADA claim because he failed to pursue his administrative remedies regarding the propriety of his medical examination); *E.E.O.C. v. Allied Sys.*, 36 F.Supp.2d 515, 522 (N.D. N.Y.1999) (explaining that the EEOC could not challenge the medical directors' determinations about whether a driver met the DOT's requirements for certification in an ADA case because "DOT regulations at 49 C.F.R. § 391.47 provide for a mechanism of administrative review in the event that 'there is a disagreement between the physician for the driver and the physician for the motor carrier concerning the driver's qualification'") (citation omitted); *Campbell v. Fed. Express Corp.*, 918 F.Supp. 912, 921 (D. Md. 1996) (dismissing plaintiff's ADA claim because "the source of his redress was not under the ADA but instead was with the [DOT], in the first instance").

grant of enforcement authority under the ADA, may avoid the exhaustion

requirements set forth in the DOT regulations.  The undersigned concludes that it

may not.  Just as the EEOC is charged with special enforcement authority by

Congress, so too is the DOT charged with the specific power to prescribe the

qualifications for drivers of commercial motor carriers.  49 U.S.C. § 31102(b)(1).

The DOT, through the Federal Motor Carrier Safety Act (FMCSA), has

promulgated the Federal Motor Carrier Safety Regulations (FMSCR), which

establish the "minimum qualifications for persons who drive commercial motor

vehicles as, for, or on behalf of motor carriers" and also establish the "minimum

duties of motor carriers with respect to the qualifications of their drivers."  49

C.F.R. § 391.1.  Under these regulations, the DOT requires that every individual

seeking to drive commercial motor vehicles must pass a DOT physical

examination.  49 C.F.R. § 391.41 (describing physical qualifications for drivers).

Specifically, a "medical examiner is required to certify that the driver does not

have any physical, mental, or organic condition that might affect the driver's

ability to operate a commercial motor vehicle safely."  49 C.F.R. § 391.43(f).  In

addition, the DOT is charged with resolving conflicts in the medical opinions

offered by the company's and the driver's physicians.  In a case where there are

conflicting medical evaluations, the driver may submit an application for resolution

of the conflict to the Director of the Office of Motor Carrier Research and

Standards.  49 C.F.R. § 391.47.  Within sixty days of the Director's determination, the driver or motor carrier may appeal the decision to the Associate Administrator. Thereafter, judicial review is available.

In a pre-*Waffle House* case, a New York District Court held that the EEOC may not challenge the decisions of the physicians in district court because of the DOT regulations.  *E.E.O.C. v. Allied Systems, Inc.*, 36 F.Supp.2d 515, 522 (N.D. N.Y. 1999).  Specially, the court pointed out that DOT regulations found at 49 C.F.R. § 391.47 provide for a mechanism of administrative review in the event that "there is a disagreement between the physician for the driver and the physician for the motor carrier concerning the driver's qualification" and "[i]t is exactly because reasonable medical judgments as to such subjective assessments, made in good faith, may reasonably differ, that an extra-statutory exhaustion requirement is justified here."  *Id.*, quoting, *Campbell v. Federal Express Corp.*, 918 F.Supp. 912, 918 (D. Md. 1996).  "It is undisputed that [the aggrieved employee] failed to pursue his administrative remedies under 49 C.F.R. § 391.47 before filing his complaint with [the EEOC or] the court.  The court will not abrogate clear congressional intent which vests driver fitness issues in the Secretary of Transportation.  49 U.S.C. § 31136(a)(3).  Nor will the court usurp the powers of the [Office of Motor Carrier Research and Standards] to determine whether a physician's examination procedures were flawed or conclusions erroneous."  *Id.*,

quoting, *Prado v. Continental Air Transport Co.*, 982 F.Supp. 1304, 1308 (N.D.

Ill. 1997), citing 49 C.F.R. § 391. 47.  Accordingly, the court held that because the

aggrieved party was not a qualified individual with a disability (having failed to

obtain a medical certificate), the EEOC's complaint failed.

　　　　Contrary to the position of the EEOC in this case, the fact that Doe had a

valid medical certificate is not determinative.[3]  The EEOC attempts to distinguish

*Allied Systems* and other cases on this basis, but the question of Doe's physical

qualification is an element of the ADA claim that the EEOC must prove.  As

recognized by the Sixth Circuit, compliance with DOT safety regulations is an

essential function of the job for a commercial driver.  *King v. Mrs. Grissom's

Salads*, *Inc.*, 187 F.3d 636 (6th Cir. 1999).[4]  "*When Congress enacted the ADA, it

recognized that federal safety rules would limit application of the ADA as a matter

of law*.  The Senate Labor and Human Resources Committee Report on the ADA

stated that 'a person with a disability applying for or currently holding a job

---

　　　[3]  Logically, even if a driver has been issued a medical certificate based on the earlier state of his or her health, a person's health can change and worsen over time rendering that person disqualified to operate a motor vehicle.

　　　[4]  Under the ADA, an employer can apply "qualification standards" that deny a job to an individual with a disability as long as those standards are "job-related and consistent with business necessity."  42 U.S.C. § 12113(a); 29 C.F.R. § 1630.15(b)(1).  Moreover, an employer may have a defense to "a charge of discrimination if an action is required or necessitated by another Federal law or regulation."  29 C.F.R. § 1630.15(e).

subject to [DOT standards for drivers] must be able to satisfy these physical

qualification standards in order to be considered a qualified individual with a

disability' under title I of this legislation." *Albertsons, Inc. v. Kirkingburg*, 527

U.S. 555, 573-74 (1999), quoting, S.Rep. No. 101-116, pp. 27-28 (1990) (emphasis

added).[5]  As noted in *Harris*, the court could not "reach Harris's ADA claim until

the question of his physical qualification is resolved pursuant to the DOT

procedures in 49 U.S.C. § 391.47(b)(2)."  *Harris*, 339 F.3d 635 at 639.  "[I]t is

axiomatic that the EEOC stands in the shoes of those aggrieved persons in the

sense that it must prove all the elements of their [discrimination] claims to obtain

individual relief for them."  *E.E.O.C. v. Cintas Corp.*, 2010 WL 3733978 (E.D.

Mich. 2010), quoting, *E.E.O.C. v. CRST Van Expedited, Inc.*, 611 F.Supp.2d 918,

929 (N.D. Iowa 2009).  This, of course, includes a showing that the aggrieved

employee is "otherwise qualified for the position."  *Whitfield v. Tennessee*, --- F.3d

----, 2011 WL 1085657 (6th Cir. 2011).  Here, such a showing includes

establishing that Doe satisfied the DOT's physical qualification requirements.  To

_____

[5]  In addition, the House Committee on Education and Labor, which considered the legislation that ultimately became the ADA, stated as follows: "With respect to covered entities subject to rules promulgated by the Department of Transportation regarding physical qualifications for drivers of certain classifications of motor vehicles, it is the Committee's intent that a person with a disability applying for or currently holding a job subject to these standards must be able to satisfy any physical qualification standard that is job related and consistent with business necessity in order to be considered a qualified individual with a disability."  H. Rep. No. 101-485(II), 101st Cong., 2d Sess., at 57 (1990).

allow the EEOC the opportunity to show that Doe satisfied the physical qualification requirements of the DOT regulations, without requiring that the administrative process to have run its course, would undermine the statutory and regulatory scheme of the DOT, which is specifically charged with making such determinations in the event of a dispute and has the expertise to address these issues as the agency charged with resolving conflicts in medical opinions.

The undersigned is also not persuaded that there was no conflict or that Doe could not have filed a claim with the DOT.  In this vein, the DOT should have the first pass at determining whether defendant's policies are appropriate under DOT regulations.  Section 391.47 sets forth a detailed framework and specific requirements for the claims process:

> (a) Applications. Applications for determination of a driver's medical qualifications under standards in this part will only be accepted if they conform to the requirements of this section.
>
> (b) Content. Applications will be accepted for consideration only if the following conditions are met.
>
> > (1) The application must contain the name and address of the driver, motor carrier, and all physicians involved in the proceeding.
> >
> > (2) *The applicant must submit proof that there is a disagreement between the physician for the driver and the physician for the motor carrier concerning the driver's qualifications.*
> >
> > (3) The applicant must submit a copy of an opinion and

report including results of all tests of an impartial medical specialist in the field in which the medical conflict arose. The specialist should be one agreed to by the motor carrier and the driver.

(i) In cases where the driver refuIses to agree on a specialist and the applicant is the motor carrier, the applicant must submit a statement of his/her agreement to submit the matter to an impartial medical specialist in the field, proof that he/she has requested the driver to submit to the medical specialist, and the response, if any, of the driver to his/her request.

(ii) In cases where the motor carrier refuses to agree on a medical specialist, the driver must submit an opinion and test results of an impartial medical specialist, proof that he/she has requested the motor carrier to agree to submit the matter to the medical specialist and the response, if any, of the motor carrier to his/her request.

(4) The applicant must include a statement explaining in detail why the decision of the medical specialist identified in paragraph (b)(3) of this section, is unacceptable.

(5) The applicant must submit proof that the medical specialist mentioned in paragraph (b)(3) of this section was provided, prior to his/her determination, the medical history of the driver and an agreed-upon statement of the work the driver performs.

(6) The applicant must submit the medical history and statement of work provided to the medical specialist under paragraph (b)(5) of this section.

> (7) The applicant must submit all medical records and
> statements of the physicians who have given opinions on
> the driver's qualifications.
> * * *
>
> (c) Information. The Director, Office of Bus and Truck Standards and
> Operations (MC-PSDPSD) may request further information from the
> applicant if he/she determines that a decision cannot be made on the
> evidence submitted. If the applicant fails to submit the information
> requested, the Director may refuse to issue a determination.
> * * *
>
> (2) Reply. Any party may submit a reply to the
> notification within 15 days after service. Such reply must
> be accompanied by all evidence the party wants the
> Director, Office of Bus and Truck Standards and
> Operations (MC-PSDPSD) to consider in making his/her
> determination. Evidence submitted should include all
> medical records and test results upon which the party
> relies.
>
> (3) Parties. A party for the purposes of this section
> includes the motor carrier and the driver, or anyone else
> submitting an application.[6]

49 C.F.R. § 391.47 (emphasis added).  Section 391.47 merely requires there to be a

disagreement between the physician for the employee and the physician for the

company.  There is nothing in this provision suggesting that an aggrieved

employee may not file a claim under this provision if he has a validly issued

medical certificate.

Moreover, there is nothing in this regulation suggesting that if the

---

6  The parties did not address whether the EEOC could have filed an
administrative claim on behalf of Doe, but nothing in the FMCSR appears to
disallow such a claim.

company's physician does not perform a physical examination, somehow the dispute is disqualified from the scope of this required procedure.  If the DOT finds that the failure of the company to perform a physical examination, as opposed to a records review, is insufficient under the regulations, then the DOT should be given the opportunity to make such a determination as part of its review on the merits of plaintiff's claim.  The detailed process set forth above in § 391.47 is clearly designed to force the parties to submit all pertinent evidence, to make a complete administrative record, and to allow the DOT (the agency with expertise on the subject matter) to make a decision on the merits.  There is nothing in the ADA suggesting that this procedure can be bypassed by virtue of the EEOC's enforcement authority under the ADA, which would bypass the very limitation placed on the ADA by the Congress through the DOT procedures.  Further, to allow the EEOC to avoid the above administrative process would essentially override the FMCSA, which granted the DOT a Congressional mandate of its own.[7]

The reasoning employed by the undersigned in reaching this decision is not inconsistent with *Waffle House*.  In *Waffle House*, the "only issue before [the Court was] whether the fact that [the employee had] signed a mandatory arbitration

---

[7] Given the foregoing recommendation, the other bases for defendant's motion for summary judgment need not be addressed.

agreement limits the remedies available to the EEOC." 534 U.S. at 297. At issue there was whether the EEOC, in pursuing its own attempt to enforce the ADA's prohibitions against discrimination, was bound by an arbitration agreement signed by the employee. The Supreme Court said the EEOC could seek a judicial remedy without first pursuing arbitration because the EEOC was not a party to the arbitration agreement and the rights of the EEOC were not necessarily derivative. The major factual distinction between *Waffle House* and the present case is that, rather than a private arbitration agreement, the procedure bypassed by the employee here is a regulatory process intended to address disputes between motor carriers and drivers relating to the medical qualifications of the driver. With that regulatory process comes the expertise of the agency charged with enforcing rules regarding the safe operation of motor vehicles and its familiarity with medical conditions that result in an unreasonable risk to the public. The pre-*Waffle House* case noted above, *EEOC v. Allied Systems*, concluded that an employee must exhaust these same administrative remedies before making a claim with the EEOC and, therefore, the EEOC could not challenge the underlying decision finding him unqualified to operate a motor vehicle.[8] The basis of that decision related to the

---

[8] The *Allied* case was not a direct attack on the underlying process but the court concluded that, in light of the fact that the driver was found unfit to perform the essential functions of his employment, he was not a "qualified individual with a disability" under the ADA. The driver's failure to challenge that decision consistent with the requirements of the regulatory process prevented the finding

substantive nature of the administrative process.  The wisdom of that decision is not contradicted by *Waffle House.*

In fact, *Waffle House* noted the need to continue to recognize that the employee's "conduct may have the effect of limiting the relief that the EEOC may obtain in court."  534 U.S. at 296.  While the "EEOC [may have the] exclusive authority over the choice of forum and the prayer for relief ... principles of res judicata, mootness, [and] mitigation ... apply to EEOC claims."  *Id.* at 298.  The present circumstances are not simply the "choice of forum" that existed in *Waffle House.*  Rather, the present circumstances represent the bypassing of an administrative process conducted by the federal agency responsible for the safety of the public regarding commercial motor vehicles.  The driver's failure "to submit a petition as specified in [49 C.F.R. § 386.13(a)] shall constitute a waiver of the right to petition for review of the determination or letter of disqualification [and such] becomes the final decision of the Assistant Administrator 30 days after the time to submit the reply or petition to review has expired..."  49 C.F.R. § 386.13(b).  "'A party who fails to exhaust administrative remedies is precluded from raising those issues in the district court.'"  *Allied*, 36 F.Supp.2d at 522, quoting, *Prado v. Continental Air Transport*, 982 F.Supp. 1304, 1308 (N.D. Ill.

---

from being re-litigated in federal court in what was, in essence, an application of claim preclusion, or res judicata, principles.  *Allied*, 36 F.Supp.2d at 521.

Report and Recommendation
Motion for Summary Judgment
*E.E.O.C. v. P.A.M. Transport*; Case No. 09-13851

1997).  "The court will not abrogate clear congressional intent which vests driver fitness issues in the Secretary of Transportation."  *Allied*, 36 F.Supp.2d at 522. *Waffle House* clearly allows the EEOC to select a "forum" to litigate its claims under the ADA from a procedural sense, but it does not go so far as to allow the EEOC to bypass, or stand in the shoes of a driver who has bypassed, a substantive, congressionally created procedure for resolving the fitness of a driver to operate commercial vehicles without suffering the same consequences of the driver who attempts to litigate his or her own claims.

For these reasons, the undersigned concludes that the EEOC may not bring suit under the ADA where the administrative process has not been exhausted with the DOT.  Thus, defendant's motion for summary judgment should be granted.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED** and plaintiff's complaint be **DISMISSED** without prejudice.[9]

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

---

[9]  A plaintiff's failure to satisfy the condition precedent of exhausting administrative remedies generally results in a dismissal of the action without prejudice.  *See e.g.*, *Local Union 369, Intern. Broth. of Elec. Workers, AFL-CIO v. ADT Sec. Services, Inc.*, 393 Fed.Appx. 290, 294 (6th Cir. 2010).

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  May 10, 2011                                   s/Michael Hluchaniuk
                                                      Michael Hluchaniuk
                                                      United States Magistrate Judge

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on May 10, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Nedra D. Campbell, Frederick R. Damm, and Michael J. Tauscher</u>.

s/Tammy Hallwood_____
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
