**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | |
| Plaintiff, | ) | Case No. 4:09-CV-13851 |
| | ) | Hon. Michael A. Goldsmith |
| v. | ) | Magistrate: Michael J. Hluchaniuk |
| P.A.M. TRANSPORT, INC., | ) | |
| Defendant. | ) | |

_______________________________________/


| | |
|---|---|
| LAURIE A. YOUNG | F.R. DAMM (P12462) |
| NEDRA CAMPBELL (P58768) | MICHAEL J. TAUSCHER (P31718) |
| AARIKA MACK-BROWN | SCOPELITIS, GARVIN, LIGHT, |
| EQUAL EMPLOYMENT | HANSON & FEARY, PLC |
| OPPORTUNITY COMMISSION | Counsel for Defendant |
| Counsel for Plaintiff | 535 Griswold St., Ste. 1818 |
| 477 Michigan Ave, Room 865 | Detroit, Michigan 48226 |
| Detroit, Michigan 48226 | (313) 237-7400 / (313) 963-7425 fax |
| (313) 226-3410 / 6584 fax | |


_______________________________________/

**PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S
MOTION FOR SUMMARY JUDGMENT ON LIABILITY
FOR VIOLATION OF 42 U.S.C. § 12112(d)(4)(A)**

NOW COMES the Equal Employment Opportunity Commission and pursuant to Rule 56 of the Federal Rules of Civil Procedure, files this Motion for Summary Judgment on the Issue of Liability and Brief in Support of its Motion. The Commission asserts that there are no genuine issues of material fact in controversy and therefore the Commission is entitled to summary judgment as a matter of law on its claim that Defendant's policy violates

Section 102 of the Americans with Disabilities Act by subjecting John Doe and a class of similarly situated truck drivers to unlawful disability-related medical inquiries.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Respectfully submitted,

s/ Nedra Campbell
NEDRA D. CAMPBELL (P58768)
Trial Attorney
DETROIT FIELD OFFICE
Patrick V. McNamara
477 Michigan Avenue, Room 865
Detroit, Michigan 48226
Nedra.Campbell@eeoc.gov
Tel. No. (313) 226-3410

Dated: October 17, 2011

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | |
| Plaintiff, | ) | Case No. 4:09-CV-13851 |
| | ) | Hon. Michael A. Goldsmith |
| v. | ) | Magistrate: Michael J. Hluchaniuk |
| P.A.M. TRANSPORT, INC., | ) | |
| Defendant. | ) | |

______________________________________/


| | |
|---|---|
| LAURIE A. YOUNG | F.R. DAMM (P12462) |
| NEDRA CAMPBELL (P58768) | MICHAEL J. TAUSCHER (P31718) |
| AARIKA MACK-BROWN | SCOPELITIS, GARVIN, LIGHT, |
| EQUAL EMPLOYMENT | HANSON & FEARY, PLC |
| OPPORTUNITY COMMISSION | Counsel for Defendant |
| Counsel for Plaintiff | 535 Griswold St., Ste. 1818 |
| 477 Michigan Ave, Room 865 | Detroit, Michigan 48226 |
| Detroit, Michigan 48226 | (313) 237-7400 / (313) 963-7425 fax |
| (313) 226-3410 / 6584 fax | |


______________________________________/

**BRIEF IN SUPPORT OF PLAINTIFF
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S
MOTION FOR SUMMARY JUDGMENT ON LIABILITY
FOR VIOLATION OF 42 U.S.C. § 12112(d)(4)(A)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... v

MOST APPROPRIATE AUTHORITY .......... vi

STATEMENT OF MATERIAL FACTS .......... viii

INTRODUCTION .......... 1

STATEMENT OF FACTS .......... 1

LEGAL AUTHORITY .......... 5

A. 42 U.S.C. § 12112(d)(4)(A) .......... 5

B. Summary Judgment Standard .......... 6

ARGUMENT .......... 6

A. Doe and the Other Class Members Were Employees of Defendant and Were Subjected to Disability-Related Medical Inquiries. .......... 6

B. No Evidence Exists That PAM's Medical Clearance Policy Is Job-Related and Consistent with Business Necessity. .......... 8

CONCLUSION .......... 12

INDEX OF EXHIBITS .......... 14

# TABLE OF AUTHORITIES

**CASES**

*Bates, et al. v. Dura Automobile System, Inc.*, 625 F.3d 283 (6th Cir. 2010) ..... 4, 5

*Bates v. Dura Automobile System, Inc.*, 650 F. Supp. 2d 754 (M.D. Tenn. 2009) ..... 8, 11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..... 5

*EEOC v. Murray, Inc.*, 175 F. Supp. 2d 1053 (M.D. TN 2001) ..... 7

*EEOC v. Prevo's Family Market, Inc.*, 135 F.3d 1089 (6th Cir. 1998) 7

*Harris v. Metropolitan Government of Nashville & Davidson Cnty., Tenn.*, 594 F.3d 476 (6th Cir. 2010) ..... 5

*Kroll v. White Lake Ambulance Authority*, No. 1:09-CV-626, 2010 U.S. Dist. LEXIS 85404 (W.D. Mich. Aug. 19, 2010) ..... 4, 7

*Lee v. City of Columbus*, 636 F.3d 245 (6th Cir. 2011) ..... 5, 6

*Logan v. Denny's, Inc.*, 259 F.3d 558 (6th Cir. 2001) ..... 5

*Scott v. Allied Waste Serv. Of Bucks-Mont.*, No. 10-105, 2010 U.S. Dist. LEXIS 136202 (Dec. 23, 2010 E.D. Pa.) ..... 4, 5

*Scott v. Napolitano*, 717 F. Supp. 2d 1071 (S.D. Ca. 2010) ..... 8, 10, 11

*Wice v. GM*, 2008 U.S. Dist. LEXIS 106727, 2008 WL 5235996 (E.D. Mich. Dec. 15, 2008) ..... 8

**STATUTES**

42 U.S.C. § 12112(d)(4)(A) ..... 4, 5, 6, 7, 11

**RULES**

Federal Rule of Civil Procedure 56 ..... 1, 5

## MOST APPROPRIATE AUTHORITY

Section 102(d)(4)(A) of the Americans with Disabilities Act which provides: "A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature and severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).

## QUESTION PRESENTED

1. Does Defendant's *Medical Clearance Policy* which requires its drivers to inform it whenever the driver has contact with a medical professional violate the Americans with Disabilities Act as a matter of law because it is not job-related and consistent with business necessity?

## **STATEMENT OF MATERIAL FACTS**

1. PAM Transport, Inc. is an interstate commercial motor carrier that employs truck drivers who have been certified as qualified to operate a commercial motor vehicle by the Department of Transportation ("DOT"). *Defendant's Motion for Summary Judgment*, Dkt. 43, filed on 12/13/2010, pg. 16.

2. PAM's *Medical Clearance Policy* reads:

> "Per company policy, illness or injury needs to be reported to the Medical Compliance Department. If a driver seeks medical treatment through a licensed health care facility or medical provider, he or she will need to be cleared through the Medical Compliance Department prior to getting back to work. This protocol has been established to ensure the safety of our drivers, the welfare of the public in general and compliance with DOT guidelines and internal criteria of the Medical Compliance Department. Prescription drugs must be reported to the Medical Compliance Department before being allowed on the truck to ensure DOT compliance." Ex. A, *P.A.M., Inc. Driver's Manual*, Medical Clearance, p. 27 (Revised 2005).

3. PAM interprets its policy to require all of its drivers to report to the company any type of contact with a medical professional. Ex. B, Janice Brown Deposition, 103:2-104:4, 105:23-106, 107:19-25, 110:8-111; Ex. C, Rule 30(b)(6) Deposition on *Defendant's Medical Clearance Policy*, Longinotti, 6:14-19; Ex. D, Katherine McCarty Deposition, 33:12-41:18, 116:20-121:17, 124:16-125:13.

4. PAM requires its drivers to report contacts with medical professional even when the reason the driver contacted the professional indicates nothing about a driver's ability to drive and when the driver receives

5. Once a driver reports medical contact, the driver can be placed on a medical hold. Ex. C, Rule 30(b)(6) Deposition on *Defendant's Medical Clearance Policy,* Longinotti Deposition, 4:24-25; 5:1-5.

6. PAM may request the complete medical records of a driver before releasing the driver from medical hold. Ex. F, Kenneth Hixson Deposition, 43:23-25; 44:1-2; 44:8-10.

7. PAM may request a complete list of all prescription medications. Ex. G, Longinotti, 62:1-7.

8. PAM requires its drivers to follow the directions of their physicians. Ex. B, Brown, 203:4-205:6.

9. The driver is not paid while on a medical hold. Ex. B, Brown, 153:21-23.

10. After thirty (30) days of being on a medical hold, the driver is administratively terminated if the medical hold has not been released by the Medical Compliance department. Ex. B, Brown, 245:17.

11. Defendant named two individuals, John Hill and Dr. Ellison Wittels, as experts. Neither of them understood that Defendant's *Medical Clearance Policy* required that drivers report all contact with medical professionals regardless of reason. Ex. E, Hill Deposition, 54:21-25;

12. Hill was of the belief that under the *Medical Clearance Policy*, "employees who visit a physician before returning to work have to notify P.A.M. of any condition that could affect their driving a commercial vehicle." Ex. E, Hill Deposition, 54:21-25; 55:1-2.

13. Dr. Wittels thought that the policy required drivers to report to the company illness or injury that can affect the health and safety of the drivers. Ex. H, Dr. Wittels Deposition, 146:25-147:21, 150:6 -151:4

14. Dr. Wittels also admitted that he was not speaking of OB/GYN checkups or any routine/preventive examinations when he said in his Expert Report that "medical treatment or issuance of a prescription are, in my opinion, proper criteria" for further inquiry by an employer regarding the health and safety of the driver. Ex. H, Dr. Wittels Deposition, 154:11- 20, 156:17- 157:7.

15. The Department of Transportation does not require that PAM maintain a *Medical Clearance Policy* that requires drivers to report all contacts with medical professionals. Ex. E, Hill, 84:25; 85-1-2; Ex. F, Hixson, 93:1:5; Ex. G, Longinotti, 35:8-11; Ex. H, Dr. Wittels, 154:7-10; Ex. I, Clark Gray Deposition, 115:15-19.

16. In fact, Swift, one of PAMs' competitors, does not maintain a policy as broad as PAM's policy. Ex. J, Swift's Policy.

17. Swift's policy meets DOT regulations. Ex. E, Hill, 87:6-88:22; Ex. G, Longinotti, 29:2-20.

18. Swift doesn't require drivers to report each medical contact. PAM could change their medical policy to Swift's and still comply with the DOT. In fact, PAM could only require a physical every two years and comply with the DOT regulations. Ex. I, Gray Deposition, 127:1-128:22; 130:2-134:13.

19. PAM's policy goes beyond DOT requirements and is more stringent than Swift and USA Truck. Ex. G, Longinotti Deposition, 94:1-95:7.

20. PAM's policy requires drivers to report all medication to PAM but that is not required by the DOT. Ex. E, Hill Deposition, 133:6-23.

21. Under the policy, pap smears, flu shots, dental cleanings, allergy check ups all would need to be reported. Ex. D, McCarty Deposition, 119:18-120:13.

## I. INTRODUCTION

On September 29, 2009, the Equal Employment Opportunity Commission (hereinafter "Plaintiff," "EEOC" or "the Commission") filed this lawsuit against Defendant, P.A.M. Transport, Inc. (hereinafter "Defendant" or "PAM") under the Americans with Disabilities Act ("ADA"). The Defendant violates 42 U.S.C. § 12112(d)(4)(A) by maintaining a medical clearance policy which requires its drivers to report any and all medical contact with a medical professional. Given PAM's admissions during the course of discovery, it is evident that there are no material factual issues with respect to the questions presented by the Commission's Motion for Summary Judgment. Therefore, the Court should grant this motion in its entirety.

## II. STATEMENT OF FACTS

PAM maintains the following *Medical Clearance Policy*:

> Per company policy, illness or injury needs to be reported to the Medical Compliance Department. If a driver seeks medical treatment through a licensed health care facility or medical provider, he or she will need to be cleared through the Medical Compliance Department prior to getting back to work. This protocol has been established to ensure the safety of our drivers, the welfare of the public in general and compliance with DOT guidelines and internal criteria of the Medical Compliance Department. Prescription drugs must be reported to the Medical Compliance Department before being allowed on the truck to ensure DOT compliance. Ex. A, P.A.M., Inc. Driver's Manual, Medical Clearance, p. 27 (Revised 2005).

This policy, which was drafted by Kenneth Hixson, PAM's corporate counsel at the time, sought to codify the company's then current practices. Ex. F, Hixson,

28:10; 29:2-5. The policy was drafted sometime after 1994 and remains in effect today in essentially its original form. Ex. F, Hixson, 87:2-9. All of PAM's drivers are subjected to the company's *Medical Clearance Policy* contained in its driver manual.

Under the policy, all illnesses, injuries, and medical treatment must be reported to the company. Ex. B, Brown, 110:8-25. A driver must report to the company any and all medical contact s/he has. Ex. C, Rule 30(b)(6) Deposition on Defendant's *Medical Clearance Policy*, Longinotti, 6:14-18; 15:25; 16:1-2. When a driver contacts the company under the policy, the driver can be placed on a "medical hold" and may not be dispatched unless and until the company releases the hold. Ex. C, Rule 30(b)(6) Deposition on *Defendant's Medical Clearance Policy*, Longinotti, 4:24-25; 5:1-5.

For example, if a driver has herpes and has a routine doctor's visit for this condition, he would have to report this to the company, and a female driver who has a routine OB/GYN checkup would have to report the appointment and would be placed on a medical hold as a result. Ex. C, Rule 30(b)(6) Deposition on *Defendant's Medical Clearance Policy*; Longinotti, 19:25; 20:1-4; Hixson, 35:9-19. PAM also interprets this policy as allowing the company to obtain the medical records of its drivers, including information regarding all types of prescriptions Ex. F, Hixson, 43:23-25; 44:1-2; 44:8-10; Ex. G, Longinotti, 62:1-7.

Based on the deposition testimony, it is clear that PAM's requests for medical records is not tailored to the essential functions of the job of driving a

truck or even to the reasons why the driver has sought medical attention. For example, in Doe's case, Brown requested two years of his medical records merely because he reported that he had a routine physical with his infectious disease specialist. Ex. B, Brown, 191:6-18.

Katherine McCarty, Defendant's former Medical Review Clerk whose responsibilities included receiving from drivers reports of their contact with medical professionals, placing drivers on medical hold, and releasing them from hold once information about the contact is received, does not believe that a driver who has been seen for a routine physical, a flu shot, or even for a cold or sinus infection is unable to drive a truck. Ex. D, McCarty, 33-41, 122-124.

Additionally, PAM has named two individuals as experts, a former administrator of the Federal Motor Carrier Safety Administration ("FMCSA") John Hill, and Dr. Ellison Wittels, in support of its claims. However, neither of the experts named by the Defendant understood that Defendant's *Medical Clearance Policy* required drivers to report all contact with medical professionals regardless of reason. Ex. E, Hill, 54:21-25; 55:1-2; Ex. H, Wittels, 146:25-147:21. In fact, Hill, who was a commander for the Indiana State Police motor carrier division prior to working at the FMCSA, testified that the Indiana State Police had a policy which required its police officers to notify their commanders if they had a condition that would preclude them from performing the essential functions of their job. Ex. E, Hill, 28:22-25. Quite unlike PAM, the Indiana State Police did not require its police officers to report routine physicals. Ex. E, Hill, 28:18:22. In addition, Hill testified that while working

for the FMSCA, he was responsible for ensuring that the inspectors who performed safety inspections on trucks could safely perform their jobs. Hill explained further that the FMCSA only required that these individuals under his supervision report conditions that affected the individuals' ability to perform the essential functions of their job. Ex. E, Hill, 27:3-4, 28:22-25, 34: 3-12, 34:13-18.

Likewise, Dr. Wittels thought that the policy required drivers to report to the company illness or injury that can affect the health and safety of the drivers. Ex. H, Wittels, 146:25-147:21, 150:6 -151:4. Dr. Wittels also testified that when he stated on page 18 of his Expert Report that "[m]edical treatment or issuance of a prescription are … proper criteria for a motor carrier to initiate further inquiry into the current ability of a [commercial motor vehicle "CMV"] driver to safely operate a CMV" he was not referring to routine physicals as he does not consider routine physicals and other preventive treatment "medical treatment." Ex. H, Wittels, 156:17-157:7, ex.1. He stated that he viewed routine preventive examinations differently than illnesses or injuries. *Id.*

Lastly, PAM's *Medical Clearance Policy* was drafted to comply with DOT regulations, and not with the ADA. Ex. G, Longinotti, 35:8-11; Ex. F, Hixson, 93:1:5. In fact, PAM has acknowledged that PAM's policy "is more stringent" than DOT regulations, and that it could have a less stringent policy, like the policy maintained by a competitor, Swift Transport. Ex. E, Hill, 84:25; 85-1-2; Ex. F, Hixson, 93:1:5; Ex. G, Longinotti, 35:8-11, 94:1-95:7; Ex. H, Dr. Wittels, 154:7-10; Ex. I, Clark Gray Deposition, 115:15-19.

## III. LEGAL AUTHORITY

### A. 42 U.S.C. § 12112(d)(4)(A)

The Americans with Disabilities Act of 1990 prohibits an employer from making disability-related inquiries unless such an inquiry is shown to be job-related and consistent with business necessity. 42 U.S.C. § 12112(d)(4)(A). An inquiry is "job-related and consistent with business necessity" only when an employer has "a reasonable belief, based on objective evidence that (1) an employee's ability to perform essential job functions will be impaired by a medical condition; or (2) an employee will pose a direct threat." *Kroll v. White Lake Ambulance Auth.,* No. 1:09-CV-626, 2010 U.S. Dist. LEXIS 85404, *9-10 (W.D. Mich. Aug. 19, 2010) *citing EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act*, 915.002, at p. 14-15 (07/27/00). In order to establish a claim under 42 U.S.C. § 12112(d)(4)(A), in the absence of business necessity , the plaintiff need only prove that individuals seeking relief were employees of Defendant and the policy amounted to an inquiry into whether the individual had a disability or a history of disability. *See*, *e.g.*, *Bates, et al. v. Dura Auto. Sys., Inc.*, 625 F.3d 283, 285-26 (6th Cir. 2010); *Scott v. Allied Waste Serv. Of Bucks-Mont.* No. 10-105, 2010 U.S. Dist. LEXIS 136202, at *14 (Dec. 23, 2010 E.D. Pa.).

**B. Summary Judgment Standard**

Summary judgment is proper when, viewing the facts and drawing all inferences in the light most favorable to the nonmoving party, there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. *Lee v. City of Columbus*, 636 F.3d 245, 249 (6th Cir. 2011); *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 594 F.3d 476, 482 (6th Cir. 2010) (citing Federal Rule of Civil Procedure 56(c)). In order to prevail, the moving party need only demonstrate the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

**IV. ARGUMENT**

**A. Doe and the Other Class Members Were Employees of Defendant and Were Subjected to Disability-Related Medical Inquiries.**

The Commission is entitled to have this Court grant its motion for summary judgment on its 42 U.S.C. § 12112(d)(4)(A) claim since there are no material factual issues in dispute. It is undisputed that PAM's policy and practices constitute disability-related inquiries.

To establish a claim under 42 U.S.C. § 12112(d)(4)(A), the Commission need only show that the individuals on whose behalf it proceeds were employees at the time they were subjected to the inquiry and that these employees were subjected to a disability-related inquiry. *See, e.g.*, *Bates,* 625 F.3d at 285-26; *Scott*, 2010 U.S. Dist. LEXIS 136202, at *14. And, the

undisputed evidence shows that Defendant's *Medical Clearance Policy* is an inquiry as to whether the drivers were disabled and/or as to the nature of their disabilities.

The Sixth Circuit has made it clear that the ADA extends not only to questions specifically about a disability, illness, or injury, but also to those questions which necessarily require the revelation of an employee's past or present disability, illness, or injury. In *Lee v. City of Columbus*, the Sixth Circuit reviewed the legality of a directive which required police officers returning to work after more than three (3) days of sick leave to submit a note to their immediate supervisor from their doctor stating the "nature of the illness" which necessitated the sick leave. Although the Court determined that requiring such a general note after more than three (3) days of sick leave is not necessarily an unlawful disability-related inquiry, it concluded that questions seeking "information about illnesses, mental conditions, or other impairments … [and] asking an employee whether he is taking prescription drugs or medication …trigger the ADA's … protections" under 42 U.S.C. § 12112(d)(4)(A). *Lee*, 636 F.3d at 254-55.

Thus, under *Lee*, PAM's *Medical Clearance Policy* is an inquiry under 42 U.S.C. § 12112(d)(4)(A) because pursuant to it PAM asks the exact questions the Sixth Circuit concluded triggered the ADA's protections. For example, Janice Brown and Katherine McCarty, who were both responsible for implementing the policy on a day-to-day basis, have testified that drivers had to report each contact the driver had with a medical professional and, in order

to be released to drive after making the report, had to identify the medical issue for which the driver was being seen, their expected return-to-work date, as well as all medication prescribed to them. Ex. B, Brown, 103:2-104:4, 105:23-106, 107:19-25, 110:8-111; Ex. D, McCarty, 33:12-41:18, 116:20-121:17, 124:16-125:13. Therefore, the undisputed evidence shows that the PAM *Medical Clearance Policy* amounts to a disability-related inquiry under 42 U.S.C. § 12112(d)(4)(A).

**B. No Evidence Exists That PAM's Medical Clearance Policy Is Job-Related and Consistent with Business Necessity.**

Because the uncontroverted facts show that Defendant's *Medical Clearance Policy* amounts to a disability-related inquiry, the only way Defendant can prevail is to prove that the policy was "job-related and consistent with business necessity." *See*, *EEOC v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1094 (6th Cir. 1998); *EEOC v. Murray, Inc.,* 175 F.Supp. 2d 1053 (M.D. TN 2001). However, the undisputed facts show that there is no factual dispute and the policy is not job-related or consistent with business necessity.

An inquiry is "job related and consistent with business necessity" only when an employer has "a reasonable belief, based on objective evidence that (1) an employee's ability to perform essential job functions will be impaired by a medical condition; or (2) an employee will pose a direct threat." *Kroll,* 2010 U.S. Dist. LEXIS 85404, *9-10. Moreover, it is not enough for Defendant to prove mere expediency; Defendant must show that the request genuinely serves the

asserted business necessity and that it is no broader or more intrusive than necessary. *See Bates v. Dura Auto. Sys., Inc.*, 650 F. Supp. 2d 754, 770-772 (M.D. Tenn. 2009) (holding that "in proving business necessity, an employer must show more than that its inquiry is . . . convenient or beneficial to its business [it] must first show that the asserted 'business necessity' is vital to the business. . . [and] is no broader or more intrusive than necessary") *quoting Wice v. GM*, 2008 U.S. Dist. LEXIS 106727, 2008 WL 5235996 (E.D. Mich. Dec. 15, 2008); *Scott v. Napolitano*, 717 F. Supp. 2d 1071, 1084-1086 (S.D. Ca. 2010) (holding that questions such as "Have you ever been treated for a mental condition?", "Have you ever had any illness, injury, or other condition (including learning disability, attention deficit disorder, etc.)?", "Have you ever consulted or been treated by clinics, physicians, healers, or other practitioners within the past years for other than minor illness?", in addition to being disability-related inquiries, were not narrowly tailored to address the plaintiff's ability to work and were, therefore, not job-related and consistent with business necessity).

The Commission concedes that the ability to safely operate a truck is an essential function of the job at issue. However, the undisputed evidence shows that Defendant's *Medical Clearance Policy* is too broad and intrusive as much of the medical information reportable under the policy - *e.g.*, flu shots, teeth cleanings, yearly physicals, herpes prescriptions; acne cream- is unrelated to driver safety. Consequently, the policy is not job-related and consistent with business necessity.

Defendant's own witnesses –including its proffered experts–contradict Defendant's claim that the depth and breadth of its policy is necessitated by Defendant's need to employ only safe drivers. For example, Defendant's expert John Hill testified that prior to joining the FMCSA, he served as a member of the Indiana State Police for twenty-nine (29) years. Ex. E, Hill, 18:15; 20:7-8. While there, he was a commander for the motor carrier division. Ex. E, Hill, 27:3-4. According to Hill, the Indiana State Police had a policy which required its police officers to notify their commanders if they had a condition that would preclude them from performing the essential functions of their job. Ex. E, Hill, 28:22-25. Quite unlike PAM, the Indiana State Police did not require its police officers to report routine physicals. Ex. E, Hill, 28:18:22.

Hill next explained that while at the FMCSA part of his job was to ensure that the inspectors, who perform safety inspections on trucks, could safely perform their jobs. Ex. E, Hill, 34: 3-12. Like the Indiana State Police officers, these inspectors did not have to report all medical contact the inspector may have had with a medical professional. Again, these inspectors were only required to report to the FMCSA if "their ability to perform the essential functions of the job" had been affected. Ex. E, Hill, 34:13-18.

Hill, who was verbally informed of what PAM's *Medical Clearance Policy* states by defense counsel, thought that PAM's policy meant that "employees who visit a physician before returning to work have to notify P.A.M. of any condition that could affect their driving a commercial vehicle." Ex. E, Hill,

54:21-25; 55:1-2. He, in fact, testified that a medical condition like herpes did not have "anything to do with" driving a truck. Ex. E, Hill, 59:12-15.

Likewise, the testimony of Defendant's other expert, Dr. Ellison Wittels, a physician who has conducted DOT physicals and who has served on DOT committees, suggests Defendant's *Medical Clearance Policy* is not job-related and consistent with business necessity. First, Dr. Wittels was under a misimpression similar to that of Mr. Hill regarding the breadth of PAM's *Medical Clearance Policy* because, like Mr. Hill, Dr. Wittels thought that the policy required drivers to report to the company illness or injury that can affect the health and safety of the drivers. Ex. H, Wittels, 146:25-147:21, 150:6 - 151:4. Furthermore, Dr. Wittels admitted that when he stated in his report that "[m]edical treatment or issuance of a prescription are … a proper criteria for a motor carrier to initiate further inquiry into the current ability of a [commercial motor vehicle] driver to safely operate a CMV", he was not speaking of routine physicals and preventive treatment as he did not consider routine physicals "medical treatment." Ex. H, Wittels, 156:17-157:7, ex.1. Dr. Wittels specifically said that such treatment was "different than illnesses or injuries." *Id.*

Even PAM's own Medical Review Clerk[1] admits to not believing that drivers who had been seen for routine physicals, flu shots, or even for colds or sinus infections were unable to drive a truck. Ex. D, McCarty, 33-41, 122-124.

[1] The Medical Review Clerk is responsible for receiving from drivers reports of their contact with medical professionals, placing drivers on medical hold, and releasing them from hold once information about the contact is received

All in all, the testimony of these witnesses directly contradicts PAM's assertion that its current policy is necessitated by the need to employ only safe drivers. What is more, this testimony directly supports the Commission's argument that the Defendant's policy is not job-related and consistent with business necessity because the policy requires reports on matters which are unrelated to Defendant's goal of employing safe drivers. *See Bates*, 650 F. Supp. 2d at 770-772; *Scott*, 717 F. Supp. 2d at 1084-1086.

Defendant's policy also cannot be justified by claiming that it is required by DOT regulations. Nothing in the DOT regulations requires Defendant's current *Medical Clearance Policy*. Ex. H, Wittels, 146:25-149:13; Ex. G, Longinotti, 35:8-11; Ex. F, Hixson, 93:1:5. In fact, the testimony of PAM's experts does not suggest that its *Medical Clearance Policy* is required by DOT regulation, and certainly does not suggest that it is "job-related and consistent with business necessity." Ex. E, Hill Expert Report; Ex. H, Dr. Wittles Expert Report.

## V. CONCLUSION

There are no material factual issues regarding Defendant's *Medical Clearance Policy* and practices. There is no dispute that Defendant maintains the *Medical Clearance Policy* at issue in this case. There is no dispute that under this policy, Defendant requires its drivers to report any and all medical contact the driver has with a medical professional, regardless of the reason. Defendant thereby subjects its drivers to inquiries made unlawful under the

ADA that prohibits disability-related inquiries of current employees which are not "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). The Commission respectfully urges this Court to determine that Defendant's policy, as a matter of law, violates the ADA, and grant the Commission's motion for summary judgment on liability for its violation of Section 102 of the ADA.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Respectfully submitted,

s/ Nedra Campbell
NEDRA D. CAMPBELL (P58768)
Trial Attorney
DETROIT FIELD OFFICE
Patrick V. McNamara
477 Michigan Avenue, Room 865
Detroit, Michigan 48226
Nedra.Campbell@eeoc.gov
Tel. No. (313) 226-3410

Dated: October 17, 2011

**<u>INDEX OF EXHIBITS</u>**

Exhibit A – PAM's *Medical Clearance Policy*

Exhibit B – Excerpt of Janice Brown Deposition

Exhibit C – Excerpt of Rule 30(b)(6) Deposition on *Defendant's Medical Clearance Policy*

Exhibit D – Excerpt of Katherine McCarty Deposition

Exhibit E – Excerpt of John Hill Deposition & Expert Report

Exhibit F – Excerpt of Kenneth Hixson Deposition

Exhibit G – Excerpt of Tony Longinotti Deposition

Exhibit H – Excerpt of Dr. Ellison Wittels Deposition & Expert Report

Exhibit I – Excerpt of Clark Gray Deposition

Exhibit J – Swift's Policy

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | |
| Plaintiff, | ) | Case No. 4:09-CV-13851 |
| | ) | Hon. Michael A. Goldsmith |
| v. | ) | Magistrate: Michael J. Hluchaniuk |
| P.A.M. TRANSPORT, INC., | ) | |
| Defendant. | ) | |

_______________________________________/

LAURIE A. YOUNG
NEDRA CAMPBELL (P58768)
AARIKA MACK-BROWN
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Counsel for Plaintiff
477 Michigan Ave, Room 865
Detroit, Michigan 48226
(313) 226-3410 / 6584 fax

F.R. DAMM (P12462)
MICHAEL J. TAUSCHER (P31718)
SCOPELITIS, GARVIN, LIGHT,
HANSON & FEARY, PLC
Counsel for Defendant
535 Griswold St., Ste. 1818
Detroit, Michigan 48226
(313) 237-7400 / (313) 963-7425 fax

_______________________________________/

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record, Frederick R. Damm, fdamm@scopelitis.com, and Michael J. Tauscher, mtauscher@scopelitis.com, to their electronic mail addresses on file with the Clerk of the Court.

s/ Nedra Campbell
Nedra D. Campbell (P58768)