**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:09-cv-13851<br>Hon: Mark A. Goldsmith<br>Magistrate: Michael J. Hluchaniuk |
| P.A.M. TRANSPORT, INC. | ) | |
| Defendant. | ) | |


| | |
|---|---|
| Nedra D. Campbell (P58768)<br>Equal Employment Opportunity Commission<br>Patrick V. McNamara Federal Building<br>477 Michigan Ave., Rm. 865<br>Detroit, MI 48226<br>(313) 226-3410<br>Attorneys for Plaintiff<br>NedraCampbell@eeoc.gov | F. R. Damm (P12462)<br>Michael J. Tauscher (P31718)<br>SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, PLC<br>Attorneys for Defendant<br>535 Griswold St., Ste. 1818<br>Detroit, MI 48226<br>(313) 237-7400<br>fdamm@scopelitis.com |


**MEMORANDUM IN RESPONSE TO PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

STATEMENT OF ISSUES....ii

STATEMENT OF CONTROLLING AUTHORITY....iii

INDEX OF AUTHORITIES....iv-vi

INDEX OF EXHIBITS....vii

COUNTER-STATEMENT OF FACTS....viii-xii

I. INTRODUCTION....1

II. STANDARD OF REVIEW....2

III. ARGUMENT....2

A. The EEOC Has Failed to Carry its Burden of Showing Discrimination under the ADA Based upon its Sole Remaining Theory, P.A.M.'s Policy is an Allegedly Impermissible Inquiry....2

1. EEOC Has Failed to Prove a Prima Facie Case of Discrimination....4

2. EEOC Has Offered Only Conclusory Allegations Insufficient to Put P.A.M. Transport on Notice....7

B. The Medical Clearance Policy is Consistent with FMCSRs and ADA....9

1. 49 CFR 390.3 Permits Motor Carriers to Create More Stringent....9 Requirements to Promote Safety and Avoid Preventable Accidents

2. The Medical Clearance Policy is Not the Type of Policy Prohibited by the ADA under 12112(d)(4)(A)....16

IV. CONCLUSION AND REQUESTED RELIEF....20

## STATEMENT OF ISSUES

Is P.A.M. Transport's medical clearance policy a proper policy crafted out of concerns for the physical qualifications of drivers and general public safety, and drafted in compliance with both the Americans with Disabilities Act and the Federal Motor Carrier Safety Regulations rather than an "impermissible" medical inquiry under 42 U.S.C. § 12112(d)(4)(A)?

## STATEMENT OF CONTROLLING AUTHORITY

*Harrison v. Benchmark Electronics Huntsville, Inc.*, 593 F.3d 1206, 1216-17 (11th Cir. 2010)

*Gailes v. Federal Express Corp.*, 386 Fed.Appx. 506, 506, fn. 1 (6th Cir. 2010)

*EEOC v. United Parcel Service, Inc.*, Case No. 09-cv-5291, 2011 WL 4538450 (N.D. Ill. Sept. 28, 2011)

*Nafziger v. McDermott Intern.*, Inc., 467 F.3d 514, 520 (6th Cir. 2006)

*EEOC v. J.B. Hunt Transportation, Inc.*, 128 F. Supp. 2d 117 (N.D. N.Y. 2001)

*Serrano v. Cintas Corp.*, Case Nos. 04-40132, 06-12311, 2010 WL 1417802 (E.D. Mich. April 5, 2010)

*EEOC v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1097 (6th Cir. 1998)

## INDEX OF AUTHORITIES

### Cases

*Armstrong v. Turner Industries, Inc.,* 141 F.3d 554, 561-62 (5th Cir. 1998).......5

*Bassett v. Rent-a-Center,* 80 Fed.Appx. 776, 778 (3d Cir. 2003)......................5

*Bates v. Dura Automotive System, Inc.*, 625 F.3d 283 (6th Cir. 2010)............3,5

*Chandler v. City of Dallas*, 2 F.3d 1385 (5th Cir. 1993)................................12

*Collado v. United Parcel Service Co.*, 419 F.3d 1143 (11th Cir. 2005).....12,15,16

*Cossette v. Minnesota Power & Light,* 188 F.3d 964, 971 (8th Cir. 1999)..........5

*EEOC v. Cintas Corporation*, Case Nos. Nos. 04–40132, 06–12311, 2010 WL 2010 WL 3733978 (E.D. Mich. Sept. 20, 2010)..................................6,7,8,20

*EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 777 (7th Cir. 2007)...7,8

*EEOC v. J.B. Hunt Transportation, Inc.*, 128 F. Supp. 2d 117 (N.D. N.Y. 2001).........................................................................................1,6,12,14

*EEOC v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1097 (6th Cir. 1998).....17

*EEOC v. United Parcel Service, Inc.*, Case No. 09-cv-5291, 2011 WL 4538450 (N.D. Ill. Sept. 28, 2011)......................................................................1

*Freeport-McMoran Resource Partners Ltd. Partnership v. B-B Paint Corp.*, 56 F. Supp. 2d 823, 837 (E.D. Mich. 1999).........................................................2

*Gadja v. Manhattan and Bronx Surface Transit Operating Authority*, 396 F.3d 187, 189 (2d Cir. 2005)..............................................................................17

*Gailes v. Federal Express Corp.*, 386 Fed.Appx. 506, 506, fn. 1 (6th Cir. 2010).. ..........................................................................................................4

*Godfrey v. New York City Transit Authority*, 2009 WL 3075207, *10 (E.D. N.Y. Sept. 23, 2009)..........................................................................................17

*Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986)........................2

*Griffin v. Steeltek, Inc.*, 160 F.3d 591, 595 (10th Cir. 1998)............................5

*Griffin v. Steeltek, Inc.*, 160 F.3d 591, 595 (10th Cir. 1998)............................5

*Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999)...................4

*Harrison v. Benchmark Electronics Huntsville, Inc.*, 593 F.3d 1206, 1216-17 (11th Cir. 2010)............................................................................4,5

*Lee v. U.S. Postal Service*, 12 Fed.Appx. 322, 323 (6th Cir. 2001)....................7

*Martino v. Forward Air, Inc.*, 609 F.3d 1, 4-5 (1st Cir. 2010)..........................4

*Mickens v. Polk County School Board*, 430 F. Supp. 2d 1265, 1282 (M.D. Fla. 2006)..................................................................................................5

*Nafziger v. McDermott Intern.*, Inc., 467 F.3d 514, 520 (6th Cir. 2006)............8

*O'Neal v. City of New Albany*, 293 F.3d 998, 1007 (7th Cir. 2002)..................5

*Scott v. Allied Waste Services of Bucks-Mont*, Case No. 10-105, 2010 WL 5257643 (E.D. Pa. Dec. 23, 2010)...........................................................3

*Serrano v. Cintas Corp.*, Case Nos. 04-40132, 06-12311, 2010 WL 1417802 (E.D. Mich. April 5, 2010)...................................................................1

*Tate v. Farmland Industries, Inc.*, 268 F.3d 989 (10th Cir. 2001)....................12

*Thoms v. ABF Freight System, Inc.*, 31 F. Supp. 2d 1119 (E.D. Wis.1998).12,13,15

*Tice v. Centre Area Transportation Authority*, 247 F.3d 506, 519-20 (3d. Cir. 2001).............................................................................................5,17

*Transport Workers Union of America, Local 100, AFL-CIO v. New York City Transit Authority*, 341 F. Supp. 2d 432, 450 (S.D. N.Y. 2004)..................................17

*Wice v. General Motors Corp.*, 2008 WL 5235996.........................................17

*Wimbush v. Wyeth*, 619 F.3d 632, 636 (6th Cir. 2010)..................................2

*Wyland v. Boddie-Noell Enterprises, Inc.*, 165 F.3d 913, *3 (4th Cir.1998).......18

**Statutes**

42 U.S.C. § 1211(b)..............................................................................3

42 U.S.C. § § 12112(d)............................................................................1,3

42 U.S.C. § 12112(d)(4)(A)...........................................................1,4,6,16,17

49 CFR § 390.3...................................................................................9,14,16

49 C.F.R. § 391.41...............................................................................10,11

49 C.F.R. § 391.41(b)(3).............................................................................13

49 C.F.R § 392.3.........................................................................................14

49 C.F.R § 392.4.........................................................................................14

**Other Authority**

Fed.R.Civ.P. 8(a)...........................................................................................7

Fed.R.Civ.P. 56(c).........................................................................................2

## INDEX OF EXHIBITS


Exhibit A: *P.A.M. Transport Employee Manual*

Exhibit B: *Deposition of Tony Longinotti, pp. 36-37, 41-44*

Exhibit C: *Deposition of Kenneth Hixon, pp. 25, 60-61, 63-73, 78-79*

Exhibit D: *Rule 30(b)(6) Deposition of Tony Longinotti, pp. 6-8*

Exhibit E: *Deposition of John Hill, pp. 58-59, 73-74, 86-87, 121, 137-138*

Exhibit F: *Deposition of Dr. Ellison Wittels, pp. 76, 139-141, 155-156*

Exhibit G: *Deposition of Katherine McCarty, p. 33*

Exhibit H: *Deposition of Janice Brown, pp. 72-73, 105, 114-117, 139-140, 154*

Exhibit I: *10/24/11 Email from Nedra Campbell to Fritz Damm*

Exhibit J: *EEOC's Initial Disclosures*

Exhibit K: *FMCSA 2012 Budget Estimate*

Exhibit L: *EEOC 2012 Budget Estimate*

## COUNTER-STATEMENT[1] OF FACTS

1. P.A.M. Transport incorporates the facts as stated in P.A.M Transport, Inc.'s ("P.A.M. Transport") Memorandum in Support of Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, Dkt. No. 90.

2. P.A.M. Transport's medical clearance policy states the following: "Per company policy, illness or injury needs to be reported to the medical compliance department. If a driver seeks medical treatment through a licensed healthcare facility or medical provider, he or she will need to be cleared through the medical department prior to getting back on the truck. This protocol has been established to ensure the safety of our drivers, the welfare of the public in general, and compliance with DOT guidelines and internal criteria of the medical compliance department." See *P.A.M. Transport Employee Manual*, attached hereto as Exhibit A.

3. P.A.M. Transport requires drivers to report all medical appointments and treatments under its medical clearance policy because of issues that arose with driver self-reporting (i.e. lack of honesty or forthrightness), particularly pertaining to medications. *Deposition of Tony Longinotti*, attached hereto as Exhibit B, at 41-42 (policy created after P.A.M. Transport discovered that medications were not being reported, meaning

---

[1] PAM Transport notes that, within the EEOC's Statement of Material Facts, there were two mysteriously incomplete paragraphs that did not provide full statements and/or authority for those statements. See EEOC's Brief in Support of Motion for Summary Judgment on Liability, Dkt. No. 89, at viii-x (Statement Nos. 4 and 11).

drivers were "under dispatch with disqualifying medications, not only in the truck, but in their system. Had one of those drivers had an accident, which may have resulted in serious injury or death, that risk that would put the company at is considerable."); *Deposition of Kenneth Hixson*, attached hereto as Exhibit C, at 72-73 (before policy created, drivers were obtaining prescriptions that could threaten the ability to drive without any knowledge on the part of P.A.M. Transport).

4. Also, the creation of the policy came in the wake of major accidents and a need to step up awareness. *Longinotti TR*, Exhibit B, at 36-37.

5. The policy was also recognition of the fact that medical conditions can change fast and result in a driver that is unqualified to drive, at which time P.A.M. Transport would face a safety risk and risk of liability. *Hixson TR*, Exhibit C, at 65 (When Kenneth Hixson consulted with Joe Boenke, an Equal Employment Opportunity Commision ("EEOC") representative, Mr. Boenke stated that P.A.M. Transport had an "obligation" to look into drivers' medical appointments because "the medical condition of drivers changes daily.").

6. P.A.M. Transport does not request complete medical records[2] of an individual, but rather condition-specific records. *Rule 30(b)(6) Deposition of Tony Longinotti*, attached hereto as Exhibit D, at 7-8.

---

[2] The EEOC cited to Hixson for the premise that PAM Transport could acquire complete medical records under the medical clearance policy. EEOC's Brief in Support of Motion for Summary Judgment on Liability, Dkt. No. 89, at ix. Hixson instead stated that information regarding a medical condition could be obtained via medical release. Exhibit B, at 43-44.

7. Both of P.A.M. Transport's expert witnesses—John Hill and Dr. Ellison Wittels—expressed an understanding of P.A.M. Transport's policy and correctly explained that a request for information and records under P.A.M. Transport's medical clearance policy relates to the ability to safely operate a truck. *Deposition of John Hill*, attached hereto as Exhibit E, at 121 (P.A.M. Transport has "a duty to make certain that their drivers can operate their vehicle in a safe manner and without clear indication from a treating physician . . . [t]hey can't okay that driver to get back on the road" because P.A.M. Transport would be "assuming too much risk."); *Deposition of Dr. Ellison Wittels*, attached hereto as Exhibit F, at 155-56 (due to continuing obligation on part of carrier to only allow medically qualified drivers to operate trucks, P.A.M. Transport's policy is appropriate, as even an individual with herpes could have complications that make him/her unfit to operate a truck under DOT regulations).

8. John Hill acknowledged that he was not a physician who could declare whether or not acne treatment or medication could interfere with a person's ability to drive. *Hill TR*, Exhibit E, at 73-74.

9. However, Hill also recognized that, if a driver from P.A.M. Transport has herpes, he or she would need to report a subsequent visit to his or her physician—the report would center on whether the driver was fit to return to driving a truck. *Hill TR*, Exhibit E, at 58-59.

10. Dr. Wittels acknowledged that the EEOC's oft-used hypothetical situations involving acne and herpes would have to be evaluated individually

because both herpes and acne treatments could potentially create an interference with the ability to drive. *Wittels TR*, Exhibit F, at 76, 156.

11. P.A.M. Transport's policy is consistent with the Federal Motor Carrier Safety Regulations ("FMCSRs"), as 49 C.F.R. § 390.3 allows a motor carrier to enforce more stringent requirements if related to the safe operation of vehicles. Hill TR, Exhibit E, at 86-87; *Wittels TR*, Exhibit F, at 139-41.

12. Katherine McCarty is not a medical professional[3] able to make determinations regarding whether a driver would be unfit to drive based on a medical condition or treatment. *Deposition of Katherine McCarty*, attached hereto as Exhibit G, at 33; *Deposition of Janice Brown*, attached hereto as Exhibit H, at 72-73.

13. While each medical appointment must be reported by a driver to P.A.M. Transport under the medical clearance policy, each driver's circumstances are reviewed individually to determine any threat to the safety of the driver or to the public under the FMCSRs; if there is an obvious absence of threat to the driver's ability to drive safely, then there will be little to no interference with the driver's work schedule. *Deposition of Janice Brown*, attached hereto as Exhibit H, at 105, 114-117, 154.

[3] The EEOC asserted that Katherine McCarty "does not believe that a driver who has been seen for a routine physical, a flu shot, or even for a cold or sinus infection is unable to drive a truck." EEOC's Brief in Support of Motion for Summary Judgment on Liability, Dkt. No. 89, at 3. Nothing in the evidence suggests that Katherine McCarty is qualified to determine a driver's ability to drive a truck under certain medical circumstances.

14. Not all drivers with a medical appointment will be placed on a medical hold; certain appointments, such as an eye exam, will not trigger the need for a medical hold. *Longinotti TR*, Exhibit D, at 6-7.

15. Medical records are not requested in every situation in which a driver reports a medical appointment. *Brown TR*, Exhibit H, at 139-40 (request made when new diagnosis provided, when driver hospitalized, or when driver reports ongoing condition or medical issue that was not revealed at time of issuance of medical certificate).

## I.

## INTRODUCTION

The EEOC has failed to plead a prima facie case of discrimination under 42 U.S.C. § 12112(d)(4)(A), as it instead appears to presume that it can proceed with generic evidence. Previous courts have rejected similar efforts on the part of the EEOC. *See Serrano v. Cintas Corp.*, Case Nos. 04-40132, 06-12311, 2010 WL 1417802 (E.D. Mich. April 5, 2010); *EEOC v. J.B. Hunt Transportation, Inc.*, 128 F. Supp. 2d 117 (N.D. N.Y. 2001); *EEOC v. United Parcel Service, Inc.*, Case No. 09-cv-5291, 2011 WL 4538450 (N.D. Ill. Sept. 28, 2011). The failure to meet the evidentiary burden is aggravated by insufficient pleading related to putative class members, which is particularly troubling considering the amount of time invested in this matter. Additionally, in the EEOC's Brief in Support of Motion for Summary Judgment on Liability, Dkt. No. 89, the EEOC relies upon cases that are either unrelated to § 12112(d) or unrelated to the FMCSRs entirely.[1] When it comes to reviewing safety policies or practices, courts have deferred to the Federal Motor Carrier Safety Administration and to those within the transportation industry when it comes to crafting policies aimed at safety, in an effort to ensure that employers are not deterred from promoting safety due to restrictions imposed by other laws. P.A.M. Transport has offered transportation industry-specific cases indicating that the medical

---

[1] It should be noted that this case has been limited by the Court to the EEOC's claim of an impermissible medical inquiry claim under 42 U.S.C. § 12112(d)(4)(A). This makes Title VII cases and principles of little value, particularly in discussions of the EEOC's burden of proof (aside from comparing the two to show contrast).

clearance policy at issue is both appropriate and a business necessity. For these reasons, P.A.M. Transport respectfully requests that this Court deny the EEOC's Motion for Summary Judgment on Liability.

## II.
## STANDARD OF REVIEW

The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Wimbush v. Wyeth*, 619 F.3d 632, 636 (6th Cir. 2010). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). "This burden may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *Freeport-McMoran Resource Partners Ltd. Partnership v. B-B Paint Corp.*, 56 F. Supp. 2d 823, 837 (E.D. Mich. 1999).

## III.
## ARGUMENT

### A.
### The EEOC Has Failed to Carry its Burden of Showing Discrimination under the ADA Based upon its Sole Remaining Theory, P.A.M. Transport's Policy is an Allegedly Impermissible Inquiry

The EEOC states in its Brief that it need only show that: (1) the individuals seeking relief were employees of Defendant; and (2) the medical

clearance policy amounted to an inquiry into whether the individual had a disability or a history of disability. *EEOC's Brief in Support of Motion for Summary Judgment on Liability*, Dkt. No. 89, at 5-6. There are several issues within the EEOC's proposition. First, one of the EEOC's cases cited for this proposition, *Bates v. Dura Automotive System, Inc.*, 625 F.3d 283 (6th Cir. 2010), does not state what the EEOC has purported. *Bates*, at 285-86 (finds only that plaintiff likely need not prove his or her status as disabled under § 12112(d), while such a finding is needed under § 12112(b)). The other case cited by the EEOC, *Scott v. Allied Waste Services of Bucks-Mont*, Case No. 10-105, 2010 WL 5257643 (E.D. Pa. Dec. 23, 2010), finds that, in addition to the two factors shown above, the EEOC must also establish an "injury-in-fact." *Id.* at *5. In fact, as shown below, a number of cases agree with *Scott* when it comes to the requirement of proving a tangible harm or injury-in-fact as part of the prima facie case of discrimination under § 12112(d). Unfortunately for the EEOC, they have failed to provide satisfactory information as to any "tangible harms" suffered by individual drivers at P.A.M. Transport allegedly represented by the EEOC, leaving the EEOC deficient in its burden on summary judgment. Finally, and related to the deficient showing, the EEOC has also failed to offer basic information relative to putative class members that they are seeking to represent. Courts have found that the EEOC must put an employer on notice rather than offering mere conclusory allegations as to the class of individuals allegedly impacted by the medical clearance policy. For all these reasons, and

as more specifically outlined below, P.A.M. Transport respectfully requests that this Court deny the EEOC's Motion for Summary Judgment on Liability.

**1.**
**EEOC Has Failed to Prove a Prima Facie Case of Discrimination**

The EEOC has claimed that any information about class members and the impact of the policy upon them is reserved for the damages stage of the case. *10/24/11 Email from Nedra Campbell to Fritz Damm*, attached hereto as Exhibit I ("Since we are in the Liability Phase, the question to be resolved is whether the policy violates the ADA and not who was affected by the unlawful policy, which is a question that should be addressed during the Damages Phase."). However, the EEOC must still make its prima facie case of discrimination under the ADA or else face dismissal of its claim. *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999).

In a typical ADA case, a prima facie case of discrimination involves proof that the complaining party is a qualified individual with a disability. *Harrison v. Benchmark Electronics Huntsville, Inc.*, 593 F.3d 1206, 1216-17 (11th Cir. 2010). Under § 12112(d)(4)(A), where employees need not necessarily show disabled status in order to make a claim under the ADA, courts have determined that a prima facie case of discrimination instead involves proof of tangible harm. *Id.*; *Scott*, at *5. "Every circuit court to consider illegal inquiry claims . . . has concluded that proof of actual harm is required for recovery." *Martino v. Forward Air, Inc.*, 609 F.3d 1, 4-5 (1st Cir. 2010)(emphasis added); *see also Gailes v. Federal Express Corp.*, 386 Fed.Appx. 506, 506, fn. 1 (6th Cir.

2010); *O'Neal v. City of New Albany*, 293 F.3d 998, 1007 (7th Cir. 2002); *Bassett v. Rent-a-Center*, 80 Fed.Appx. 776, 778 (3d Cir. 2003)(summary judgment appropriate without showing of actual injury); *Mickens v. Polk County School Board*, 430 F. Supp. 2d 1265, 1282 (M.D. Fla. 2006); *Scott*, *5; *Bates v. Dura Automotive Systems, Inc.*, Case No. 1:08-cv-0029, 2011 WL 3799780, *1 (M.D. Tenn. Aug. 29, 2011); *Tice v. Centre Area Transportation Authority*, 247 F.3d 506, 519-20 (3d. Cir. 2001); *Harrison*, at 1216-17; *Armstrong v. Turner Industries, Inc.*, 141 F.3d 554, 561-62 (5th Cir. 1998)(liability must be based on "something more than a mere violation of the provision" as the plaintiff needs some "cognizable injury in fact of which the violation is a legal and proximate cause for damages"); *Griffin v. Steeltek, Inc.*, 160 F.3d 591, 595 (10th Cir. 1998); *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 971 (8th Cir. 1999). Without showing such tangible harm/injury, the EEOC has failed to establish liability via its prima facie case in order to proceed to the damages stage. The EEOC has failed to establish a basis for any award of damages.

At this stage, the EEOC has offered no proof of tangible harm. Instead, the EEOC first offered a list of 84 individuals who "should have knowledge of disability discrimination suffered due to P.A.M. Transport, Inc.'s medical policy and practices." *See EEOC's Initial Disclosures*, attached hereto as Exhibit J. This vague production was followed by production of 22 one-page inadmissible hearsay Questionnaires returned from the original group of 84. The EEOC has come forward with these Questionnaires as a result of its investigation of a time period that included over 12,000 P.A.M. Transport drivers. Likewise, the

EEOC has attempted to use examples of treatment for herpes or acne as situations in which the medical clearance policy would negatively impact the drivers through embarrassment, but they have come forward with no drivers who fit that situation.

With the establishment of tangible harm as part of the prima facie case of discrimination under § 12112(d)(4)(A), it should be noted that the EEOC has previously tried, and failed, to state that the prima face case need not be proven at the liability stage. In *J.B. Hunt*, the court rejected the EEOC's argument, finding that the EEOC "must show that at least some of the purported class members are such persons" affected by the policy, instead of simply resting on premise that a medical policy is generally violative of the ADA. *J.B. Hunt*, 128 F. Supp. 2d at 124-25. In *Cintas*, the EEOC was similarly rejected. The Court found that the EEOC needed to produce at least some information on the class members in order to allow Cintas to defend at the liability stage. *Cintas*, 2010 WL 1417802, at *3. Waiting to identify names and information on class members at the second stage is "unsatisfactory" because Cintas "quite reasonably" sought to focus attention on the specific individuals on whose behalf the EEOC seeks damages. *Id.* The Court pointed out how the EEOC, after years of investigation and litigation, should have this information and produce it in order to allow the employer to have awareness at the liability stage. *Id.* Similarly, the EEOC has spent five-plus years on investigation and litigation in this matter but still has not offered up what has been established as required for its prima facie case of discrimination.

The EEOC is under a mistaken impression that it can proceed to the damages phase of litigation without establishing a prima facie case of discrimination by showing tangible harm. "It is axiomatic that the EEOC stands in the shoes of those aggrieved persons in the sense that it must prove all of the elements of their discrimination claims to obtain individual relief for them." *Report and Recommendation*, Dkt. No. 67, at 18 (*quoting EEOC v. Cintas Corporation*, Case Nos. Nos. 04–40132, 06–12311, 2010 WL 2010 WL 3733978, *3 (E.D. Mich. Sept. 20, 2010)). Based on the failure of the EEOC to meet its evidentiary burden, P.A.M. Transport respectfully requests that this Court deny the EEOC's Motion for Summary Judgment.

**2.**
**EEOC Has Offered Only Conclusory Allegations Insufficient to Put P.A.M. Transport on Notice**

In conjunction with the prima facie case requirement, the EEOC must plead more than conclusory allegations as to class members' identification and the alleged impact of the medical clearance policy upon those individuals in order to sufficiently plead under Fed.R.Civ.P. 8(a). When the EEOC files a claim under the ADA, "it is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the Plaintiff has a right to relief by providing allegations that raise a right to relief above the speculative level." *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 777 (7th Cir. 2007); *UPS*, 2011 WL 4538450, at *2; *see also Lee v. U.S. Postal Service*, 12 Fed.Appx. 322, 323 (6th Cir. 2001). The EEOC must plead sufficient facts to put the employer on notice of the claims against it and to state a claim to relief

that is plausible on its face. *Concentra*, 496 F.3d at 777; *UPS*, at *2; *Nafziger v. McDermott Intern., Inc.*, 467 F.3d 514, 520 (6th Cir. 2006).

As seen in *UPS*, courts expect more than conclusory allegations about putative class members in an ADA case: the "EEOC could have used its investigative power to learn considerably more about the putative class members." *UPS*, 2011 WL 4538450, at *5. The EEOC offered only conclusory allegations as to the status of the other "class members," as well as the impact on them, leading the Court to dismiss the claims. *Id.* Whereas simple pleading may be sufficient in Title VII cases, ADA cases require more because of the recognition that employment decisions can be made on the basis of physical qualifications that are unique to each individual, unlike immutable characteristics such as race or sex. *Concentra*, 496 F.3d at 781-82; *UPS*, at *4.

As shown above, the EEOC in the present matter provided only one-page inadmissible hearsay Questionnaires. No individuals, aside from John Doe[2], have been specifically identified by the EEOC as actual putative class members despite years of investigation. The EEOC's history of attempting to proceed without this vital information has not been kind to them in the recent past, as seen by a negative ruling before a fellow judge in this District. *Cintas*, 2010 WL 1417802, *1 (not satisfactory for EEOC to be searching for putative class members almost 10 years after the investigation originally began). The EEOC has failed to produce any relevant information on the putative class members

[2] John Doe failed to exhaust his administrative remedies, as found by the Court. *Opinion and Order*, Dkt. No. 79. Thus, his status as a class member, and especially as a class representative, affected by the medical clearance policy is questionable at best.

despite past failures and other significant precedent. Due to this failure, P.A.M. Transport respectfully requests that this Court deny the EEOC's Motion for Summary Judgment on Liability.

## B.
## The Medical Clearance Policy is Consistent with FMCSRs and ADA

### 1.
### 49 CFR 390.3 Permits Motor Carriers to Create More Stringent Requirements to Promote Safety and Avoid Preventable Accidents

The EEOC repeatedly makes the obvious point that P.A.M. Transport acted beyond the minimum requirements for promoting safety under the FMCSRs with its medical clearance policy. *See EEOC's Brief in Support of Motion for Summary Judgment*, Dkt. No. 89. This Court recognized that the FMCSRs regulate driver safety and establish the minimum duties of a motor carrier. *Opinion and Order*, Dkt. No. 79, at 3-4; *Report and Recommendation*, Dkt. No. 67, at 15. The FMCSRs establish the right of a motor carrier to create more stringent requirements than the minimum, as long as those requirements relate to "safety of operation and employee safety and health." 49 CFR § 390.3; Hill TR, Exhibit E, at 86-87; Wittels TR, Exhibit F, at 139-41. Thus, P.A.M. Transport's policy is consistent with the FMCSRs.[3] *Id.*

[3] The EEOC in essence continues to ask this Court to usurp the rule and regulation making authority concerning transportation safety that has been specifically delegated by Congress to the Department of Transportation, and which resulted in the creation of a specialized federal agency whose sole purpose is ensuring safety in the motor carrier industry: the Federal Motor Carrier Safety Administration (FMCSA). *See Opinion and Order*, Dkt. No. 79, at 3; *Report and Recommendation*, Dkt. No. 67, at 12.

While the EEOC spends a considerable amount of time criticizing a "stringent" safety initiative[4], it does so without citing to any cases in its brief where employers, like P.A.M. Transport, are subject to the FMCSRs within the transportation industry. *See generally EEOC's Brief in Support of Motion for Summary Judgment*, Dkt. No. 89. The EEOC attempts to point to medical policies held by both the Indiana State Police and the FMCSA as comparable to one held by a motor carrier like P.A.M. Transport. *Id.* at 3-4. It would be foolish for P.A.M. Transport to adopt a policy similar to these two entities, neither of which must ensure that only physically qualified driver employees operate the company's 80,000 pound trucks. *See* 49 C.F.R. § 391.41. The Indiana State Police and the FMCSA do not employ drivers subject to the FMCSR and so are not suitable for comparison when searching for an appropriate medical policy.

P.A.M. Transport developed its medical clearance policy out of necessity and experience, as the policy came about in the wake of catastrophic accidents involving P.A.M. Transport drivers and a realization that drivers were obtaining and taking prescription medications with a multitude of side effects without P.A.M. Transport's knowledge. Hixson TR, Exhibit C, at 60-61; Longinotti TR,

---

[4]Throughout these proceedings the EEOC has seemingly been attempting to regulate via litigation what is an appropriate means of ensuring driver qualifications and safety. It should be noted that in FMCSA's proposed 2012 budget, $192 million of $606 million is allocated toward driver qualifications and safety enforcement. *FMCSA 2012 Budget Estimate*, attached hereto as Exhibit K. The FMCSA's $192 million budget for driver qualification and safety enforcement is roughly fifty percent of the EEOC's proposed 2012 budget of $385 million, none of which supports programs as to driver qualifications or safety enforcement. *EEOC 2012 Budget Estimate*, attached hereto as Exhibit L. The budget figures and allocation of same only serve to emphasize the congressional mandate given to FMCSA, not EEOC, in the area of driver qualification and safety. The determination of an appropriate safety policy is better left in the hands of motor carriers answering to the FMCSA.

Exhibit B, at 36-37. P.A.M. Transport, via its General Counsel, Kenneth Hixson, took action to develop a policy that would better ensure the safety of drivers and the general public by putting fit-to-drive decisions in the joint hands of physicians and P.A.M. Transport's own medical compliance department rather than leaving the decision to drivers with possible motivation to withhold vital medical information. Hixson TR, Exhibit C, at 63, 71-72. The medical compliance department reviews DOT Medical Examination guidance explaining when a driver is and is not medically qualified and, if there is any issue of medical interpretation, then they refer the issue to Dr. Craig Cooper, a physician with specific DOT compliance experience. Hixson TR, Exhibit C, at 78-79.

Importantly, Hixson created the policy only after consulting with those in the transportation industry and with EEOC representatives as to compliance with the ADA. Hixson TR, Exhibit C, at 63-67. One of these EEOC representatives, Joe Boenke, informed Hixson that it was P.A.M. Transport's "obligation" to have such a policy. *Id.* Hixson researched and understood the delicate balance of the ADA and the FMCSRs in his crafting of the policy. Hixson TR, Exhibit C, at 67-70. While that balance does not exist with the Indiana State Police policy or the FMCSA policy for its investigators, it does for companies in the transportation industry. These companies, like P.A.M. Transport, must ensure that only physically qualified drivers are on the road. 49 C.F.R § 391.41. While medical certifications are typically issued once every two years, the motor carrier is responsible for monitoring any changes drivers'

medical conditions on a day-to-day basis in the period of time between medical certifications. Hill TR, Exhibit E, at 137-38.

Several courts have recognized the difficulty inherent in ensuring safety and have granted transportation companies significant discretion to implement policies meant to promote safety, even in the face of challenges under the ADA. *Thoms v. ABF Freight System, Inc.*, 31 F. Supp. 2d 1119 (E.D. Wis. 1998); *Tate v. Farmland Industries, Inc.*, 268 F.3d 989 (10th Cir. 2001)(motor carrier employer can override medical examiner's certificate because employer is ultimately responsible and "has prerogative of determining what is physically required of its commercial motor vehicle operators"); *Chandler v. City of Dallas*, 2 F.3d 1385 (5th Cir. 1993)(in discussing the ability of the medical policy to cut through to whether a driver is truly safe or not: "Woe unto the employer who put such an employee [insulin-dependent diabetic] behind the wheel of a vehicle owned by the employer which was involved in a vehicle accident"); *J.B. Hunt,* 128 F. Supp.2d 117 ("No one could seriously dispute that a policy of screening applicants who will potentially operate vehicles weighing 80,000 pounds for use of medications which may impair his or her ability to drive is 'job-related.'"); *Collado v. United Parcel Service, Co.*, 419 F.3d 1143 (11th Cir. 2005) ("There are serious public policy problems with interpreting and applying the law in a way that would discourage employers from enforcing measures that safeguard the safety of the public.").

In *Thoms*, the driver, Thoms, was hospitalized with diabetes, with the realization that he would be insulin-dependent from that point forward. *Id.* at

1122. This hospitalization left him no longer physically qualified to perform his work as a truck driver, and ABF had to terminate him. *Id.* The court found no ADA violation because Thoms was not a "qualified individual with a disability." *Id.* at 1126. He was automatically disqualified from driving in interstate commerce under the FMCSRs. *See* 49 C.F.R. § 391.41(b)(3).

In *Thoms*, the court did not specify how ABF came to find out about Thoms' hospitalization. If ABF did not have a means of finding out about the hospitalization, they would be faced with placing a dangerous and medically unqualified driver on the road. If Thoms had to report his medical appointments, including any hospitalization, to ABF, in the manner seen under P.A.M. Transport's medical clearance policy, then the medical compliance department could work directly with Thoms' physician to ensure that Thoms was fit to drive a commercial motor vehicle prior to returning to work. Thoms might not come forward with his medical condition if he was simply under a duty to self-report, as seen with Swift Transportation's policy. *See EEOC's Brief in Support of Summary Judgment on Liability*, Dkt. No. 89, at x-xi. When he has to report his medical appointment to explain his absence from work and maintain his employment, as seen with P.A.M. Transport's policy, then P.A.M. Transport is more likely to become aware of physically unqualified drivers before they cause a safety risk. Longinotti TR, Exhibit B, at 42-43 (failure to report medical appointment is a violation of company policy and could result in disciplinary action, up to termination).

In *J.B. Hunt*, the motor carrier developed a list of banned medications for drivers because of the interference those medications could have on the ability to drive safely. *J.B. Hunt*, 128 F. Supp. 2d at 119-122. The policy was challenged by the EEOC under the ADA, but the Court found in favor of Hunt. The Court explained that the FMCSRs establish "the minimum qualifications for persons who drive commercial motor vehicles and the minimum duties for motor carriers who utilize over-the-road drivers" *Id.* at 118. An employer may enforce more stringent requirements under 49 C.F.R § 390.3. *Id.*

The Court further explained that trucks pose a safety risk and major concerns exist related to a driver's ability impaired by fatigue or illness under 49 C.F.R § 392.3 or as a result of medications which render a driver incapable of safe operation, under 49 C.F.R § 392.4. *Id.* These concerns come about because of the nature of the trucking industry, including irregular hours, stress, and fatigue, all of which highlight the need for monitoring the safety of these drivers. *Id.* The Court accepted Hunt's policy as a business necessity in the transportation industry because of Hunt's legitimate concerns about safety and financial exposure related to placing physically unqualified drivers on the road. *Id.* at 131. Hunt's policy, like P.A.M. Transport's, was developed as an answer to fatal accidents involving company drivers. *Id.* Both policies are aimed exclusively at establishing better safety criteria and not as a means of discriminating against disabled individuals. *Id.* at 131 ("no evidence to suggest that [the policy] was used by Hunt as anything other than a mechanism to screen applicants according to its own 'more stringent' safety criteria."); Hixson

TR, Exhibit C, at 63 ("I put together the medical clearance policy . . . solely for the purpose of making sure that we didn't have a driver out there on the road that had a medical condition that could affect his or her ability to drive safely.")

In *Collado*, UPS required all diabetic employees to complete a Diabetes Protocol before driving trucks to confirm that they were under a physician's care and that their diabetes was under control. *Id.* at 1146-47. When a supervisor discovered that the plaintiff was an insulin-dependent diabetic and yet had still been deemed physically qualified[5], the supervisor immediately removed Collado from his position as a full-time driver. *Id.* at 1145-46. Collado filed charges with the EEOC and eventually ended up before the court due to the removal of Collado from his position as a driver. *Id.* at 1146-47.

The Court found that serious safety problems could be caused by a diabetic whose disease is not under control while driving trucks. *Id.* at 1159. "The legitimacy and importance, for public safety purposes, of the [diabetes program] cannot be questioned." *Id.* The Court found the policy appropriate and found that UPS acted in the interest of safety and not retaliation in eventually removing Collado from any driving position subject to the FMCSRs. *Id.* at 1160. Similarly, P.A.M. Transport's policy has a singular aim towards safety because of the changing medical conditions of drivers that must be monitored. Hixson TR, Exhibit C, at 63. Collado was able to obtain his medical certification despite his obvious physical disqualification under the FMCSR. *Id.*

[5] As seen in the *Thoms* case, insulin-dependent diabetics are not physically qualified to drive under 49 C.F.R. § 391.41(b)(3).

at 1145-46. Because of P.A.M. Transport's proactive policy in which potentially dangerous medical conditions are monitored for safety purposes, they would be able to avoid putting an unqualified driver like Collado on the road. This would not qualify as discrimination but rather appropriate risk prevention and encouragement of safety.

P.A.M. Transport's medical clearance policy is proactive, not discriminatory. As recognized by the EEOC representative that reviewed P.A.M. Transport's medical clearance policy and by this Court, medical conditions of drivers can change at any time and P.A.M. Transport must respond accordingly. Hixson TR, Exhibit C at 65; *Opinion and Order*, Dkt. No. 79, at 4 (adopting Magistrate Hluchaniuk's Report and Recommendation); *Report and Recommendation*, Dkt. No. 67, at 17, fn. 3. P.A.M. Transport has the ability to set more stringent safety requirements under 49 C.F.R § 390.3, and it has done so without offending the ADA. P.A.M. Transport's actions in the interest of safety resemble other motor carriers whose safety policies have been deemed necessary in the above cases. For these reasons, P.A.M. Transport respectfully requests that this Court deny the EEOC's Motion for Summary Judgment.

### 2. The Medical Clearance Policy is Not the Type of Policy Prohibited by the ADA under 12112(d)(4)(A)

The 6th Circuit has recognized that the principal purpose of restrictions on medical inquiries is to "prohibit employers from making adverse employment decisions based on stereotypes and generalizations associated with the individual's disability rather than on the individual's characteristics."

*EEOC v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1097 (6th Cir. 1998)(emphasis added). The EEOC has come forth with no evidence that P.A.M. Transport makes decisions under its medical clearance policy for any reasons other than safety. There have certainly been no allegations that P.A.M. Transport has taken action on the basis of "stereotypes and generalizations associated with . . . disability" rather than by individual inquiries with an eye toward only placing physically qualified drivers on the road as required by the FMCSRs.

The purpose of safety, whether defined as a "business necessity" or simply as a proper inquiry, has been recognized as appropriate by a number of courts examining transportation employers under § 12112(d)(4)(A). *Wice v. General Motors Corp.*, 2008 WL 5235996, *3 (E.D. Mich. Dec. 15, 2008)("Ensuring a safe workplace is a business necessity."); *Transport Workers Union of America, Local 100, AFL-CIO v. New York City Transit Authority*, 341 F. Supp. 2d 432, 450 (S.D. N.Y. 2004)(clear showing that it is a business necessity to ensure bus drivers are fit to perform duties); *Tice v. Centre Area Transportation Authority*, 247 F.3d 506, 517 (3d Cir. 2001)(inconclusive independent medical examination led to examination by physician chosen by employer, which was justified due to business necessity of safety of passengers); *Gadja v. Manhattan and Bronx Surface Transit Operating Authority*, 396 F.3d 187, 189 (2d Cir. 2005)(driver's report of serious health condition led to justified medical examination due to safety concerns); *Godfrey v. New York City Transit Authority*, 2009 WL 3075207, *10 (E.D. N.Y. Sept. 23,

2009)("attempts to assess plaintiff's hearing ability were job related and consistent with a business necessity because they sought to assess plaintiff's ability to safely carry out his job"); *Wyland v. Boddie-Noell Enterprises, Inc.*, 165 F.3d 913, *3 (4th Cir.1998)(test for prescription drug use "needed to ensure the safety of the general public and protect itself from potential liability"). This Court has already noted that Congress "recognized that federal safety rules would limit application of the ADA as a matter of law." *Opinion and Order*, Dkt. No. 79, at 4 (adopting Magistrate Hluchaniuk's Report and Recommendation); *Report and Recommendation*, Dkt. No. 67, at 17.

Rather than violating the ADA with its medical clearance policy, P.A.M. Transport has shown that it created it with the ADA in mind. Hixson TR, Exhibit C, at 63-67. Additionally, P.A.M. Transport maintains a detailed and legally compliant policy related to the ADA, in which P.A.M. Transport makes clear that it "prohibits discrimination against a qualified individual with a disability." Manual, Exhibit A, at 11. However, P.A.M. Transport recognizes in its ADA policy the inherent balancing of safety under the FMCSRs and prevention of discrimination under the ADA: ". . . current employees who become disabled and thereby pose a direct threat to fellow employees, which threat may not be eliminated by reasonable accommodation, will be placed on an appropriate leave or, perhaps, terminated. However, an attempt will be made to place applicants and employees in positions for which they are qualified and in which they do not pose a direct threat." Manual, Exhibit A, at 12.

P.A.M. Transport has taken the proper actions to implement a policy aimed solely at safety and risk management that is compliant with both the ADA and the FMSCRs—no easy task. Actions under this policy are not taken on the basis of "stereotypes and generalizations" but as a result of analysis as to whether a driver is safe to be operating a commercial motor vehicle on the roadways. For these reasons, P.A.M. Transport respectfully requests that this Court deny the EEOC's Motion for Summary Judgment on Liability.

## IV.
## CONCLUSION

The EEOC has simply failed to make the following showings necessary to establish an impermissible medical inquiry : (1) a tangible harm on the part of its putative class members in order to form a prima facie case of discrimination; (2) admissible evidence as to the identity of these putative class members in order to put P.A.M. Transport on notice; (3) that P.A.M. Transport did not act in furtherance of its business necessity of maintaining safety as a motor carrier; and (4) that P.A.M. Transport based its decisions under the medical clearance policy on stereotypes and generalizations rather than by individual inquiries in the interest of safety and risk management.

The EEOC continues to hope that it can offer no admissible evidence at the "liability phase" and still proceed to the "damages phase" of the litigation. However, the EEOC has offered no basis for damages, primarily due to the fact that the EEOC has not established liability despite 5 plus years of investigation and litigation. The court in *Cintas* finally grew weary of the EEOC's tactics of bringing forth little evidence while maintaining a case against an employer over

a number of years, eventually granting summary judgment in favor of the employer. *EEOC v. Cintas Corporation*, Case Nos. Nos. 04–40132, 06–12311, 2010 WL 2010 WL 3733978 (E.D. Mich. Sept. 20, 2010). The Court later granted $2.6 million in attorney's fees and costs to Cintas based on the EEOC's mishandling of the case. *EEOC v. Cintas Corporation*, Case Nos. Nos. 04–40132, 06–12311, 2011 WL 3359622 (E.D. Mich. Aug. 4, 2011). The present case stands out as a remarkably similar refusal on the part of the EEOC to produce the required information and meet its burden of proof. Based on the foregoing, we respectfully request that this Court deny the EEOC's Motion for Summary Judgment on Liability.

Respectfully submitted,

**P.A.M. TRANSPORT, INC.**

By: s/F. R. Damm
F. R. Damm (P12462)
Michael J. Tauscher (P31718)
535 Griswold Street, Suite 1818
Detroit, MI 48226
Telephone: (313) 237-7400
Facsimile: (313) 693-7425
E-Mail: fdamm@scopelitis.com

Dated: November 7, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Nedra D. Campbell, Esq. And I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: N/A.

Respectfully Submitted:

By: s/F. R. Damm
F. R. Damm (P12462)
Michael J. Tauscher (P31718)
Counsel for Defendant,
P.A.M. Transport, Inc.
535 Griswold St., Ste. 1818
Detroit, MI 48226
(313) 237-7400
fdamm@scopelitis.com